VIELLA ROBINSON *vs.* JOSEPH H. VAN AUKEN.

Suffolk. November 22, 1905. — January 4, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Slander.  Larceny.  False Imprisonment.*

In an action by a bookkeeper against her employer for slander in charging her with larceny of money in the presence of a police officer called by him to arrest her, the communication is privileged only if made in good faith and without malice, and if it appears that the defendant was angry when he made the charge, it is a question of fact for the jury whether he was acting in good faith or in part from malice.

In an action for slander in charging the plaintiff with larceny of money belonging to the defendant, it is not necessary to prove that the exact words alleged in the declaration were spoken. It is enough to prove that such of the words as are necessary to constitute a charge of larceny were spoken in substance by the defendant.

Reasonable ground for believing that a woman employed as a bookkeeper in a picture store has stolen a sum of money less than $100 from her employer while in the store in his presence does not justify a police officer in arresting the woman without a warrant, and if by direction of her employer he arrests her without a warrant and locks her in a cell at the police station, she may maintain an action against her employer for false imprisonment.

TORT for alleged false imprisonment and slander. Writ dated June 20, 1902.

In the Superior Court the case was tried before *White*, J. upon the second count alleging false imprisonment and the fifth count alleging slander. It appeared that the plaintiff, a girl nineteen years of age, had been employed as bookkeeper and cashier in the picture store of the defendant on Washington Street in Boston for about two weeks; that at the close of business on Monday June 16, 1902, following her usual custom she took the day's receipts, less a certain amount left for change in the cash drawer, put it in an envelope marking it " Monday, $74.55," procured from the defendant the key to the locked compartment of the safe, unlocked it, put the envelope in and locked it again, handing the key back to the defendant who was standing within a foot or two of her; that on Tuesday, it being the seventeenth of June, the store was closed,. and on Wednesday night she again made up her receipts, procured the key from the defendant and unlocked the compartment for the purpose of putting in the envelope, the defendant standing the same distance from her as before, whereupon she noticed that Monday's envelope was not in the drawer and called his attention to the fact, and after search for the missing envelope had been made, he began to get excited and accused her of stealing the money, which she denied, and he thereupon sent for an officer, and in his presence according to the testimony of the plaintiff accused her of stealing the money and directed her arrest; that she was taken by the officer to the Lagrange Street station and locked in a cell, and later was taken in a wagon to the city prison where she was confined in a cell all night and in the morning was brought into the Municipal Court of the City of Boston and discharged. No warrant ever was issued for her arrest, the judge of the court declining to issue one.

Among requests for other instructions, which were given in substance, the defendant asked the judge to instruct the jury: " 2nd. That upon the pleadings and all the evidence the plaintiff is not entitled to recover upon the second count. 5th. That upon the pleadings and all the evidence the plaintiff is not entitled to recover upon the fifth count."

The judge refused to give either of these instructions.

The ninth instruction requested was as follows: " 9th. The offence of larceny of money in a building is a felony and a police

officer may lawfully arrest, without warrant, any person whom he suspects of having committed such felony."

The portion of the charge to the jury relating to this subject was as follows:

"Now personal property in a building for the most part is either in the custody of persons or in the custody of buildings. You may take any store upon Washington Street in which there is no watchman at night, somebody comes there in the morning, opens the store, during the day the clerks come there, some of the clerks or the proprietors, the servants or agents of the proprietors stay there during the day. If the business hour of that firm closes at seven o'clock then the key is turned in the door and property which has been in the custody of persons during the day, upon the turning of that lock becomes then in the custody of the building, and if the clerk who last left the store at night failed to lock the door and left it ajar, and somebody should come along there and go into that open door, which was open ever so slightly, and steal some of the personal property in there, that would be larceny in a building, because the property at the time was in the custody of the building, and that would be a felony, that is punishable by imprisonment in our State prison; but if before the turning of that key, some time during the day while the property was in the custody of persons, that same party had gone in there and stolen the same personal property it would then, if under the value of $100, be simple larceny, and the difference in the degree of the crime is fixed because in one instance it was in the custody of persons who could actively protect their property and in the other instance it was not in the protection of any persons but was in the protection of a building, and the law says that that is the greater crime to go to a building where a man has left his property in supposed safety for the night, and a man getting in to a building that is partially open so that he does not have to break and enter it, because if he does have to break and enter it to get in that is still another offence, but it is a greater offence to steal under those circumstances than it is to steal in the daytime when the parties are around there to protect their property.

"So that in this case, you have heard the testimony in this case as bearing upon the question of whether there is any evidence

here to support the contention that there was a larceny in the
building, that is, larceny of property which at the time it was
taken, if it was taken at all, was taken from the building while
in the custody of the building and not of the person. And it
was for that purpose that the officer who made the arrest was
asked whether the same account that was given to him on that
day was the same which was given here in court. And what
was the evidence here in court, because he said that the testi-
mony as he had heard it given here in court was the same that
was given to him at that time as to the way the property was
supposed to have been stolen from that safe.

" Now was the evidence which he heard and which he said
was the same, that somebody in the employ of Van Auken came
there and opened the door and swept out and then the clerk and
the workmen came and Mr. Van Auken came and last of all
came the bookkeeper, the plaintiff in this case, and at night she
was not left there, that she was the first to leave, reversing the
order, that she was the last to come and the first to leave, and
that the only opportunity that she had so far as disclosed by the
statements which were then made to him or as far as disclosed
by the evidence in this case, was that if she stole at all it was
while the proprietor was within two or three feet of her, during
the time that he passed the key to her and she unlocked and
passed it back to him. Now if the only evidence in this case is
of that kind, of a larceny, provided always that a larceny — and
it is not necessary for you to pass on the question of whether a
larceny was committed or not, but if a larceny was committed
there at that time, it was then simple larceny, because the sum
taken was less than $100, being $74.55, and if it was simple
larceny upon this evidence then the arrest was not warranted
either by the officer or by the direction of the defendant, because
a private person, Van Auken himself, provided he had gone to
his store and found a man committing a felony there, he could
have arrested for that felony himself, not being an officer, as the
law says that he may do that and rest for his justification upon
the conviction of the man. He has got to run that risk, but an
officer under the circumstances of where a felony has been com-
mitted, either seeing it done or after it is done, may proceed
upon a reasonable ground of suspicion, and where an officer has

reasonable ground of suspicion that he has found the right person he may arrest and the law justifies him in the arrest, although as a matter of fact it turns out that he has not arrested the right person.

"Now it is for you to say in this case whether there is any evidence which will warrant you in believing that the officer there after this statement had been made to him, whether there is any evidence that would warrant you in believing or finding that he at the time honestly believed and had reasonable ground to believe, a reasonable suspicion, that a felony had been committed, because if upon this evidence he did not have a reasonable ground to believe that a felony had been committed or if there was not a reasonable suspicion directed to him by the information that he received, by such as he got from the defendant and from the plaintiff, if he did not believe that a felony had been committed, then he had no justification for the arrest. It was simple larceny. And so if you find that upon this evidence he at the time believed that only a taking of the money from the safe although the safe was in that building he would not be warranted in making the arrest because no felony had been committed, and if that arrest were followed without any justification under those circumstances and it was directed or commanded or controlled by the defendant himself, in directing the actions of the officer, why, then the defendant would be put in the position of being responsible for an arrest without any justification for the arrest, and you would assess as far as this case is concerned such damages as accrued to her by reason of such illegal arrest. If, on the other hand, you find that he honestly believed and had ground to believe that a felony had been committed and that although in the event that no such felony had been committed, but he had a reasonable suspicion that it had, then there would be a justification and so far as this count is concerned, you would find for the defendant."

See R. L. c. 208, §§ 20, 26.

The jury returned a verdict for the plaintiff upon each of the counts on which the case was tried, assessing damages upon the second count, for false imprisonment, in the sum of $1,000, and on the fifth count, for slander, in the sum of $500. The defendant alleged exceptions.

*C. W. Rowley*, for the defendant.

*W. D. Chapple*, for the plaintiff.

KNOWLTON, C. J.   This case was submitted to a jury on two counts, one for slander and the other for false imprisonment. The alleged slander was in making a charge of larceny against the plaintiff in the presence of a police officer whom the defendant induced to arrest and imprison her.   The judge ruled in favor of the defendant, that the occasion was privileged, and that the defendant was not liable if he made the charge in good faith and without malice.   He said : " And so you will see that he would be excused so far as the count of slander is concerned, unless in saying what he did to the officer, at the time he said it, he said it not in good faith, but said it wantonly and recklessly and maliciously in the sense that he did it out of an entire disregard to the rights of the person whom he was accusing."   We are of opinion that the defendant has no good ground of exception to this instruction.   The protection of a privilege of this kind is lost by an abuse of the privilege. *Bradley* v. *Heath*, 12 Pick. 163. *Brow* v. *Hathaway*, 13 Allen, 239.

The defendant contends that there was no evidence that would warrant the submission to the jury of the question whether the defendant acted in bad faith, and with actual malice, in making the charge.   While the evidence on this point would have well warranted a finding that he was acting within his privilege, the defendant himself testified that he got angry on the occasion when he made the charge, and, when asked what his feelings toward the plaintiff were, answered : " I was mad, a little mad at that time."   The plaintiff testified to his conduct indicating the same thing, and we think it was a question of fact for the jury whether he was acting in good faith, or in part from malice.

The defendant's fifth request for instructions includes the question whether the evidence warranted the jury in finding that the material allegations of the declaration were proved.   It was not shown that the exact words charged were spoken, and the question is whether the substance of the language was proved.   The plaintiff was not bound to prove all the words set out in the declaration.   It was enough if she proved the substance of such of these words as were necessary to constitute a charge of larceny. *Clark* v. *Brown*, 116 Mass. 504. *Whiting* v.

*Smith,* 13 Pick. 364.   While the form of the language used by the defendant was not very particularly inquired about by the counsel on either side, and the statements were rather general, there can be no doubt that, in a variety of forms, the defendant, in the presence of the police officer, charged the plaintiff with a larceny of money.   A part of the language alleged in the declaration to have been spoken is, " I charge her with the larceny of my money."   The plaintiff testified to different expressions of the defendant in the presence of the officer, which amounted to a charge of larceny of the money, and she said of the defendant and the officer who arrested her, who were together at the police station, that " they told the sergeant at the desk that he accused me of taking this money and I was held."   We are of opinion that there was no error in the trial upon the count for slander.

As to the count for false imprisonment, the only material departure of the presiding judge from the contention of the defendant's counsel was in regard to the nature of the offence for which the plaintiff was arrested.   The legality or illegality of the imprisonment depends upon whether the officer had reasonable cause to believe her guilty of a felony.   The evidence tended strongly to show that he had reasonable cause to believe her guilty of larceny; but the money alleged to have been stolen was only $74.55, and there is no contention that the stealing of this was a felony, unless the crime was larceny in a building. According to the undisputed testimony, the plaintiff's only opportunities to steal the money were on June 16, while she had it in her hands in the performance of her duty as bookkeeper, and took the defendant's key in his presence to unlock the compartment in the safe into which it was to be put, and on June 18, in the morning, when the defendant gave her the key to unlock the compartment, and after she had unlocked it and taken the money into her hand, in his presence, by his authority. She could not have taken the money while it was in any sense in the custody of the building, and it was possible for her to take it only while she had the custody of it in his presence, and while the compartment was unlocked.   Larceny under such circumstances would not be larceny in a building.   *Commonwealth* v. *Lester,* 129 Mass. 101.   These were the circumstances of the alleged stealing, as they were stated to the officer.   The judge

rightly submitted to the jury the question whether the officer, who imprisoned her at the defendant's request, had reasonable ground for believing that she had committed larceny in a building, as distinguished from simple larceny.

Except in the particulars referred to, the defendant's requests for instructions were given in substance.

*Exceptions overruled.*