## MASSEE v. WILLIAMS.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1913.)

No. 2,267.

1. LIBEL AND SLANDER (§ 41*) — PRIVILEGED COMMUNICATIONS — QUALIFIED PRIVILEGE.

Where an interview between plaintiff and defendant at which alleged slanderous remarks were made was for the purpose of effecting the compromise of a pending suit and related to the business matters out of which such suit arose, the occasion was qualifiedly privileged as a matter of law, and the subject-matter of the discussion was also privileged.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 127–129; Dec. Dig. § 41.*]

2. LIBEL AND SLANDER (§ 123*)—ACTIONS—QUESTIONS FOR JURY.

In an action for slander, whether utterances on an occasion which was qualifiedly privileged were made in good faith was a question for the jury, and hence, notwithstanding the privilege, evidence of what was said was admissible.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. § 123.*]

3. LIBEL AND SLANDER (§ 24*)—PUBLICATION—SUFFICIENCY.

Utterances on an occasion which was qualifiedly privileged in excess of the privilege were actionable, although made only in the presence of the party slandered and his counsel.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 106; Dec. Dig. § 24.*]

4. LIBEL AND SLANDER (§ 24*) — PUBLICATION — SUFFICIENCY — "ACTIONABLE PUBLICATION."

To constitute an "actionable publication," slanderous remarks must be made to, or in such public manner as to reach, some person other than the author or publisher and the party slandered.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 106; Dec. Dig. § 24.*]

5. LIBEL AND SLANDER (§ 34*)—"PRIVILEGED COMMUNICATION."

A "privileged communication" comprehends all bona fide statements in the performance of any duty, legal, moral, or social, even though of imperfect obligation, when made with a fair and reasonable purpose of protecting the interest of the person making them or the person to whom they are made.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 113; Dec. Dig. § 34.*

For other definitions, see Words and Phrases, vol. 6, pp. 5591–5598; vol. 8, p. 7764.]

6. LIBEL AND SLANDER (§ 41*)—"CONDITIONALLY PRIVILEGED COMMUNICATION."

A "conditionally privileged communication" is a publication made on an occasion which furnishes a prima facie legal excuse for the making of it and which is privileged unless some additional fact is shown which

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

so alters the character of the occasion as to prevent its furnishing a legal excuse.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 127–129; Dec. Dig. § 41.*

• For other definitions, see Words and Phrases, vol. 2, pp. 1410, 1411.]

7. LIBEL AND SLANDER (§ 41*)—PRIVILEGED COMMUNICATIONS.

At an interview between the parties to a pending suit and the counsel for one of the parties, with reference to an attempted compromise, defendant had a right to state his defense thereto, although his statements involved fraud and misconduct on the part of the plaintiff or were intemperate or excessive from overexcitement, and if in good faith, and from reasonable cause he believed that he had a valid defense resting on plaintiff's embezzlement, misappropriation of funds, or obtaining money under false pretenses, knowledge of such defense might properly be communicated without liability as for slander.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 127–129; Dec. Dig. § 41.*]

8. LIBEL AND SLANDER (§ 51*)—MALICE—EVIDENCE.

Honest indignation and want of sound judgment on the part of the defendant to a pending suit, and the employment of strong words in discussing an attempted compromise with plaintiff and his attorneys, if he thought them justified, were not evidence of malice.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 149; Dec. Dig. § 51.*]

9. LIBEL AND SLANDER (§ 50*)—PRIVILEGED COMMUNICATIONS.

In an action for slandering plaintiff by charging him with embezzlement, misappropriation of money, etc., in discussing an attempted compromise of a pending action, whether defendant in employing the language used acted honestly and under a sense of duty was to be determined by the jury from the circumstances as they presented themselves to the mind of the defendant at the time of the publication and not from the true facts as shown at the trial.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 149; Dec. Dig. § 50.*]

10. LIBEL AND SLANDER (§ 50*) — PRIVILEGED COMMUNICATIONS — EXCEEDING PRIVILEGE.

Where a party to a pending suit obtained a conference, not for the purpose of a compromise, but as an opportunity to defame the adverse party, and indulged in defamatory language not germane to the business for which the meeting was held, or in good faith obtained a conference to negotiate a settlement, and in the course of the negotiations made slanderous, criminatory accusations against the adverse party which were neither pertinent nor necessary, or without honest effort to compromise, and from a spiteful and malicious feeling accused the adverse party of criminal wrongdoing and resorted to intimidation and threats to secure a dismissal of the suit, he abused the occasion and destroyed the privilege, and malice would be inferred by law.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 149; Dec. Dig. § 50.*]

11. LIBEL AND SLANDER (§ 51*)—PRIVILEGED COMMUNICATIONS—MALICE.

Utterances in connection with negotiations for the compromise of a pending suit do not amount to actionable defamation unless they had their origin in actual malice; the occasion being privileged.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 149; Dec. Dig. § 51.*]

12. LIBEL AND SLANDER (§ 101*)—BURDEN OF PROOF—MALICE.

In an action for slandering plaintiff, during negotiations for the compromise of a pending suit, by charging him with embezzlement in con-

nection with the matters giving rise to the suit, the burden was on plaintiff to show actual malice and was not on defendant to show that he did not abuse the privilege.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 150, 273, 275–280; Dec. Dig. § 101.*]

13. LIBEL AND SLANDER (§ 109*)—EVIDENCE—MALICE.

In an action for slandering plaintiff, in connection with the negotiations for a compromise of a pending suit, by charging plaintiff with embezzlement in connection with the matters out of which the suit arose, malice in fact might be shown not only by extrinsic evidence of personal ill feeling but also by intrinsic evidence, such as the language used, the mode and extent of the publication, and other matters in excess of the privilege.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 306; Dec. Dig. § 109.*]

14. TRIAL (§ 29*)—CONDUCT OF TRIAL—COMMENTS ON EVIDENCE.

In an action for slander, based on language used in an interview between the parties thereto, relative to an attempted compromise of a pending suit, it was improper for the court, in the presence of the jury, to state while the evidence was being received that he did not think the proof showed that the language was so within the scope of the interview and its object as to prevent its being a publication; this being a question for the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 80–83, 508; Dec. Dig. § 29.*]

15. LIBEL AND SLANDER (§ 45*)—"PRIVILEGED COMMUNICATION."

A communication is privileged when made in good faith in answer to one having an interest in the information sought, or when volunteered, if the party to whom the communication is made has an interest therein, and the one making it stands in such relation to him as to make it a reasonable duty, or at least proper, that he should give the information.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 138–140; Dec. Dig. § 45.*]

16. LIBEL AND SLANDER (§ 50½*)—PRIVILEGED COMMUNICATIONS.

Where the evidence showed that defendant in an action for slander called at the office of plaintiff's attorney for the purpose, as he testified, of settling an action against him by the plaintiff for breach of contract, his statements, if germane to the subject of discussion, were privileged, but, if he indulged in language not pertinent to the occasion and of a slanderous character, the protection of privilege was lost.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 50½.*]

17. LIBEL AND SLANDER (§ 105*)—EVIDENCE—ADMISSIBILITY.

On a trial for slander, where it appeared that defendant went to the office of plaintiff's attorneys and while there arranged for a subsequent interview with a view to effecting the compromise of a pending suit, evidence as to the first conversation with the attorneys was admissible as leading up to the second interview, even though no slanderous language, as alleged in the complaint, was shown to have been used in the first conversation.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 282, 283, 292–294; Dec. Dig. § 105.*]

18. LIBEL AND SLANDER (§ 6*)—ACTIONABLE WORDS.

It is not slanderous, in the absence of special damages, to call a man a rascal, although such a charge, if made in writing, is libelous.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 3–16; Dec. Dig. § 6.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**19. TRIAL (§ 296*)—INSTRUCTIONS—CURE BY OTHER INSTRUCTIONS.**

Error could not be predicated on the court's statement and direction, in an action for slander, that proof of the substance of the statement alleged was sufficient, where it subsequently instructed broadly and favorably to defendant that, to warrant a recovery, the proof must show that the alleged slanderous utterances were made in the exact language alleged.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

**20. LIBEL AND SLANDER (§ 100*)—PLEADING—VARIANCE.**

In actions for slander, the plaintiff is not required to prove all the words alleged in the declaration unless it takes all to constitute a cause of action, but he must prove enough to entitle him to the relief sought.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 246–256, 258–272, 291, 322, 323; Dec. Dig. § 100.*]

**21. LIBEL AND SLANDER (§ 5*)—MALICE—NECESSITY.**

In the absence of privilege, malice in law is sufficient to render one liable in damages for slander without any malice in fact.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 278; Dec. Dig. § 5.*]

**22. TRIAL (§ 214*)—INSTRUCTIONS—DUTY.**

It is the court's duty to charge the law arising upon the facts as applicable to such facts, so as to aid the jury in arriving at a correct conclusion.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 480; Dec. Dig. § 214.*]

**23. LIBEL AND SLANDER (§ 59*)—MITIGATION—GROUNDS.**

Good faith, honesty of purpose, and provocation due to a plaintiff's conduct may minimize and fix the degree of malice and thus operate to fix the amount of actual damages recoverable for slander.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 159, 166, 319; Dec. Dig. § 59.*]

**24. LIBEL AND SLANDER (§ 100*)—EVIDENCE ADMISSIBLE UNDER PLEADINGS.**

In Tennessee the defendant in an action for slander may under the general issue introduce testimony not amounting to justification in mitigation of damages.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 246–256, 258–272, 291, 322, 323; Dec. Dig. § 100.*]

**25. LIBEL AND SLANDER (§ 63*)—DAMAGES—MITIGATION.**

The amount of damages for slander should be governed or graduated by the degree of malice by which defendant was actuated, and malice or misconduct on the part of plaintiff which provoked anger and passion and the injury complained of, and a reasonable belief on defendant's part that the charges were true, should reduce the damages to which plaintiff would otherwise be entitled to the extent which the circumstances warrant.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 164, 318; Dec. Dig. § 63.*]

**26. LIBEL AND SLANDER (§ 59*)—DAMAGES—MITIGATION.**

Nothing should be received in mitigation of compensatory damages for slander which does not tend to show what those damages actually were, and where actual damages are once ascertained they cannot be mitigated, though they are to be determined in view of all mitigating circumstances.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 159, 166, 319; Dec. Dig. § 59.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

207 F.—15

27. NEW TRIAL (§ 162*)—EXCESSIVENESS OF VERDICT—REQUIRING REMITTITUR.
     Where the damages in an action for slander were excessive, the court
     properly required a remittitur as a condition to sustaining the verdict in-
     stead of awarding a new trial.

     [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 324–329; Dec.
     Dig. § 162.*]

28. LIBEL AND SLANDER (§ 101*)—EVIDENCE—REPUTATION OF PLAINTIFF.
     In an action for slander, there is a presumption of law in favor of
     plaintiff's good reputation until it is legally impeached, and hence evi-
     dence in chief of his good reputation is generally unnecessary.

     [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 150,
     273, 275–280; Dec. Dig. § 101.*]

29. LIBEL AND SLANDER (§ 104*)—EVIDENCE—MALICE.
     On a trial for slander, evidence that when defendant was served with
     the summons he told the officer that he called plaintiff a thief that morn-
     ing was admissible on the question of defendant's animus, although no
     one was shown to have heard the original utterance admitted by defend-
     ant so as to render it actionable, since defendant's state of mind when
     he made the alleged slanderous utterances was involved, and, while his
     acts and words on those occasions were the best evidence thereof, a sub-
     sequent expression of ill feeling should be received.

     [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 284–
     291; Dec. Dig. § 104.*]

In Error to the Circuit Court of the United States for the Middle
District of Tennessee; Edward T. Sanford, Judge.

Action by H. A. Williams against W. J. Massee. Judgment for
plaintiff, and defendant brings error. Reversed and remanded.

This is an action for slander. The plaintiff in error (hereinafter called the
defendant) seeks a reversal of the judgment rendered against him in favor of
the defendant in error (hereinafter called the plaintiff).

In early 1907 plaintiff and defendant and one Moore made an arrangement,
tentative at least, to raise and train horses at a farm near Macon, Ga. The
plaintiff's contribution was to be horses on which he owed $6,500, the title to
them being in one Donovan, which sum a contemplated corporation was to
assume. Plaintiff was manager of the business (which was loosely conduct-
ed and proved unprofitable) and also kept and has always had possession of
its books, accounts, and vouchers. He incurred numerous debts, on account of
which defendant and Moore, in addition to their original contribution of the
farm and an advance of $3,000, were compelled to pay the further sum of
$7,000 to avoid suits. Plaintiff submitted no written statement of the busi-
ness to his associates. The evidence is conflicting as to whether he ever re-
ported to them orally. He agreed, if permitted to sell a horse at Memphis,
to apply the proceeds on debts at Macon, but did not do so or account for
the same except to report that he had applied them on the most pressing
debts. Twenty-two horses were placed for keeping with Giddens at Pulaski,
Tenn., of which four belonged to the plaintiff and four to the farm; the
title to the others being in Donovan. In June, 1908, and twice in March,
1909, plaintiff suggested a closing of the farm business. He had previously
accepted employment at Memphis without consulting his associates. Defend-
ant demanded of him an immediate settlement in August, 1908, and after-
ward sent him four telegrams and a letter on the same subject. Plaintiff
did not meet his associates until the following December. No settlement was
then made. On March 27, 1909, plaintiff informed defendant that Giddens
had advertised the horses at Pulaski for sale to pay a $2,000 feed bill, of
his borrowing money to pay bills, of the importunities of farm creditors and
his desire to avoid a sacrifice of the horses. About April 1st he visited Ma-
con to induce the defendant to pay the feed bill but says he obtained no
promise in that respect. Evidence offered by defendant Moore and another

tends to show that at that time plaintiff expressed his solicitude for the payment of such bill and his resulting embarrassment, including the loss of his position at Memphis should the horses be sold; that he wished defendant to go to Pulaski and settle with Giddens, whom he characterized by an opprobrious epithet and as trying to rob him; that a full settlement of all farm matters was then had, defendant and Moore to pay the feed bill and plaintiff to relinquish all interest in and claim to the business, but to have the horses and secure the defendant's and Moore's release on account of them from Donovan; that plaintiff, when asked about the proceeds of the horse which he had sold, hesitated, was embarrassed, evasive, and gave no satisfactory answer; and that he expressed his great appreciation of the treatment accorded him by his associates. Plaintiff disputes this evidence. The defendant went to Pulaski, paid the Giddens bill, and prevented the sale. Plaintiff says he and the defendant disagreed before the payment was made, and that he then decided to sue defendant. The defendant denies any disagreement or that he had any intimation that plaintiff made any claim against him. After the bill was paid, plaintiff asked defendant for a loan of $50 and was told to draw for that amount. On the same day, April 6th, plaintiff, through his attorneys, Hatcher & Hatcher, sued defendant in Tennessee on account of the farm business for breach of contract. Evidence offered on plaintiff's behalf tends to show: That on the morning of April 7th, at the Fair Grounds, defendant said to one Jones: "He (the plaintiff) has brought suit against me since I have been here in Tennessee, and  *  *  * I am going to put him in the penitentiary.  *  *  * He has appropriated money and he has sold horses that belonged to me and I have got him down dead to rights.  *  *  * He is a d— thief and scoundrel, and I am going to put him in the penitentiary." That later on the same morning the defendant voluntarily called at the office of the Hatchers and asked to employ them as his counsel (the evidence on this point being uncertain), and began to talk "ugly,  *  *  * began some kind of an abuse of Mr. Williams, spoke of what he had done for him, what an ingrate he was and what a rascal he was," etc., but "made no direct charges against Mr. Williams." That, at defendant's request for a friendly conversation with plaintiff to compromise the then pending suit, an afternoon interview was arranged at Hatcher's office, at which the defendant said: "You brought a lawsuit against me, and you know d— well that I don't owe you anything; you have stolen my money, and have robbed me, and you know it; and you have embezzled my money and squandered it, obtained it under false pretenses, and if you don't dismiss that lawsuit—and you have made use of a lawsuit to compel me to pay you something that I don't owe you, and if you don't dismiss it  *  *  * I am going to put the stripes on you and send you to the penitentiary." That the discussion related to the stock farm, which had been operated under plaintiff's management, to a settlement of the pending suit concerning their partnership affairs, and to the plaintiff's sale of a horse and failure to account for the money; the defendant charging plaintiff with appropriating money belonging to the farm to his own use, but subsequently admitting that the horse perhaps belonged to the plaintiff. That the defendant was cool, angry, and greatly hurt because he had been sued. That each party informed the other of his bad reputation for truth and veracity, and that the plaintiff, when about to leave, in response to the defendant's request for a settlement of their matters out of court, told the defendant "to go to h—." The defendant's evidence tends to show that he went to Hatcher's office on the morning of April 7th to arrange a compromise of the pending suit; that he made no statement at any time at Columbia derogatory of the plaintiff, excepting that he was a "bad egg"; that he had been informed by Giddens on April 6th that plaintiff claimed ownership of several of the horses and had given one worth $300 to an attorney for personal services; that plaintiff admitted such information to be correct and, when asked where he obtained the money to buy certain horses at Indianapolis, admitted that he had used the farm money to buy those which Giddens said the plaintiff claimed; that he had lured defendant into Tennessee under the pretense of paying Giddens for the purpose of suing him; and that such admissions greatly angered defendant in view of his kindness to and previous trust reposed in plaintiff.

Evidence in behalf of defendant disputed the making of such admissions. On April 7th plaintiff brought the present action, counting on defendant's conversation at the Fair Grounds, his two conversations in Hatcher's office, and in an indefinite way on accusations made on the streets of Columbia of theft, dishonesty, and appropriation to his own use of money collected in the conduct of the farm business, but offered no evidence on this last charge. Evidence to show plaintiff's general good reputation for truth, integrity, and fair dealing was offered in chief, and also of defendant's having said to the deputy sheriff, when served with a summons in the present case, that he slapped the plaintiff in the face and called him a thief on the streets of Columbia that morning. The defendant was indicted under a Tennessee statute for maliciously charging plaintiff with crime to coerce him against his will to dismiss the suit for breach of contract. The evidence of the defendant, in the form of a deposition taken before the trial, goes to show his inability, on account of a physical ailment, to attend the hearing of his case, and that he was indicted to prohibit his presence in the state of Tennessee.

The plaintiff is 42 years of age, was born in Nashville, lived in Columbia, Tenn., from 1884 to 1892 (being three of those years in a bank), had been employed by three packing firms, and had on different occasions been connected with a Jersey farm, a farm paper, live stock business, and sales stables, respectively, with some four or five fairs, and with the breeding of horses. The defendant is president of a power company and an electric street railway company. His answer tendered the general issue. A verdict was rendered in favor of the plaintiff for $16,250. A remittitur of $8,750 ordered by the trial judge was accepted, and judgment was entered for $7,500.

George T. Hughes, of Columbia, Tenn., Walter Stokes, of Nashville, Tenn., and M. Felton Hatcher, of Macon, Ga., for plaintiff in error.

J. C. Voorhies, of Columbia, Tenn., and Harry S. Stokes and John A. Pitts, both of Nashville, Tenn., for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and SATER, District Judge.

SATER, District Judge (after stating the facts as above). Exception to the competency of the evidence offered as to the respective morning and afternoon conversations held at the office of the Hatchers was sufficiently reserved on the grounds that any communication made by the defendant at either of such meetings (1) was privileged on account of the mutual interest of the parties in the matter under discussion, and (2) was not a publication, although made in the presence of the Hatchers, who were plaintiff's attorneys, and (3) the parties were endeavoring to compromise the pending action for breach of contract, and, as the conversations related to such subject-matter, they were both privileged. Exception was also taken to that part of the charge to the jury as erroneously locating the burden of proof in which the court said, regarding the second conversation, that the burden was on the defendant to establish by a preponderance of the evidence that the words employed by him, which otherwise would be slanderous, were uttered in good faith, without malice, and within the scope of the compromise negotiations, and that, if he thus made proof in the respects named, his communications were privileged and afforded no ground of recovery against him, even if his statements were made in the presence of plaintiff's counsel; but if he failed to make such proof, and if the greater weight of the evidence showed that his

statements went beyond any attempt at compromise and were in the nature of threats and intimidation to cause the plaintiff to dismiss his suit, they were not then privileged.

[1, 2] The evidence of both parties shows that the second interview was for the purpose of effecting a compromise. It therefore was the duty of the court to declare the occasion qualifiedly privileged. Newell. Slander and Libel (2d Ed.) 392, 770; Folkard's Starkie, Slander and Libel, § 674. The subject-matter of discussion was also privileged. Whether the defendant's utterances on that occasion were made in good faith was a question for the jury. Folkard's Starkie, Slander and Libel, § 674; Robinson v. Van Auken, 190 Mass. 161, 166, 76 N. E. 601.

[3, 4] If the defendant's utterances, delivered as they were at a meeting on which all of the parties had agreed, were actionably slanderous, was there, on account of the presence of the plaintiff's counsel, such a publication of them as to confer a remedy by civil action? To constitute an actionable publication, it is essential that it be made to some third person or in such public manner as to reach third persons; that is, to some person other than the author or publisher and the party whom or whose affairs the language concerns. Sylvis v. Miller, 96 Tenn. 94, 95, 33 S. W. 921; Townsend, Slander and Libel, §§ 93, 95; Fry v. McCord Bros., 95 Tenn. 691, 33 S. W. 568; Cooley on Torts (3d Ed.) p. 366; Newell, Slander and Libel, 756. Sending a libelous letter or speaking defamatory words to a plaintiff's agent, solicitor, or counsel is a sufficient publication to a third person. Odgers, Libel and Slander (5th Ed.) 161; Townsend, Slander and Libel, 439, 440; Tuson v. Evans, 12 A. & E. 175; Huntley v. Ward, 1 F. & F. 552. cited with approval in Brewer v. Chase, 121 Mich. 526, 534, 80 N. W. 575, 46 L. R. A. 397, 80 Am. St. Rep. 527; Hancock v. Case, 2 F. & F. 711; Jacobs v. Lawrence, 4 L. R. Ir. 579; Clerk & Lindsell on Torts (4th Ed.) 568; Folkard's Starkie, Slander and Libel, § 308; Middleby v. Efiler, 118 Fed. 261, 263, 264, 55 C. C. A. 355 (C. C. A. 1), approving Brow v. Hathaway, 13 Allen (Mass.) 239, 242; Commonwealth v. Pavitt, 2 Del. Co. Rep. (Pa.) 16. The inference to be drawn from Railroad v. Delaney, 102 Tenn. 289, 52 S. W. 151, 45 L. R. A. 600, points in the same direction. In that case Delaney's agent solicited and procured, with knowledge of its contents, a letter of recommendation for him as a former employé from the company's superintendent to enable him to get employment with another road. The court held that the case did not present such language as constituted a libel per se; and, there being no special damages alleged, the action could not be sustained. We are unable to reconcile this statement and the court's discussion of the rule of damages with the theory that a libelous communication made on a privileged occasion to a party's agent is not a publication. Dickinson v. Hathaway, 122 La. 644, 48 South. 136, 21 L. R. A. (N. S.) 33, is expressly in conflict with the conclusion above reached; but with great deference to the court that decided it, we do not think it states the better rule. Our conclusion is that, if the words attributed to the defendant were in excess of his privilege, there was a publication not-

withstanding their utterance was in the presence of only the plaintiff and his counsel, and that, although the subject-matter under discussion was the compromise of the then pending suit, evidence of what defendant said was admissible for the reason that under the circumstances of the case the question as to whether or not the language was in excess of the privilege was for the determination of the jury.

[5, 6] Did the burden of proof rest on the defendant to show that he did not exceed his privilege, or on the plaintiff to show that it was abused? A privileged communication comprehends all bona fide statements in the performance of any duty, whether legal, moral, or social, even though of imperfect obligation, when made with a fair and reasonable purpose of protecting the interest of the person making them or the interest of the person to whom they are made. Post Pub. Co. v. Hallam, 59 Fed. 530, 540, 8 C. C. A. 201 (C. C. A. 6); Merchants' Ins. Co. v. Buckner, 98 Fed. 222, 223, 39 C. C. A. 19 (C. C. A. 6); Newell, Slander and Libel, 388, 389. A conditionally privileged communication is a publication made on an occasion which furnishes a prima facie legal excuse for the making of it and which is privileged unless some additional fact is shown which so alters the character of the occasion as to prevent its furnishing a legal excuse. Cooley v. Galyon, 109 Tenn. 1, 9, 10, 70 S. W. 607, 60 L. R. A. 139, 97 Am. St. Rep. 823; Townsend, Slander and Libel, 347.

[7-9] The defendant's answer was a denial of all slanderous utterances. His contention was, as stated by the court, and there is evidence tending to sustain it, that his statements were made in good faith, without malice, and with reference to the attempted compromise of the then pending suit, and that under all the circumstances, and in view of the previous dealings of the parties, whatever statements he made were, on account of plaintiff's misconduct in such dealings, believed to be true. He had a right at such interview for his own protection to state his defenses to the action brought against him, although his statements involved fraud and misconduct on the part of the plaintiff or were intemperate or excessive from overexcitement (Brow v. Hathaway, 13 Allen [Mass.] 239, 242; Newell, Slander and Libel, 510); and if, in good faith and from reasonable cause, he believed that he had a valid defense to the action for breach of contract, resting on plaintiff's embezzlement, misappropriation of funds, and obtaining money under false pretenses, knowledge of such defense was a matter of interest to both the plaintiff and his counsel and, under such circumstances as the defendant claims, might properly be communicated to them, although the communication necessarily contained criminatory matter which, but for the privilege, would be slanderous and actionable. Missouri Pac. Ry. Co. v. Richmond, 73 Tex. 568, 11 S. W. 555, 4 L. R. A. 280, 15 Am. St. Rep. 794, 800; Folkard's Starkie, Slander and Libel, § 671; Newell, Slander and Libel, 509. Honest indignation and want of sound judgment on the part of the defendant and his employment of strong words, if he thought them justified, were not evidence of malice. Odgers, Libel and Slander, 345; Newell, Slander and Libel, 324. He was privileged to say what a due regard to his interest necessitated and to employ such

words as the situation compelled; and it was the duty of the jury under proper instructions to look at the circumstances as they presented themselves to the mind of the defendant at the time of the publication, not what may have been proved at the trial to have been the true facts of the case, and then ask: Did the defendant act honestly and under a sense of duty, using such language as he might bona fide have employed under the circumstances? Did he in good faith believe the statements he made were true? Odgers, Libel and Slander, 352. An affirmative answer to these questions would repel the legal inference of malicious intent on the part of the defendant and would exonerate him from liability. Newell, Slander and Libel, 392; Hebner v. Great Northern Ry. Co., 78 Minn. 289, 80 N. W. 1128, 79 Am. St. Rep. 387, 389.

[10] If, however, he obtained a conference, not for the purpose of a compromise, but as an opportunity to defame the plaintiff, and having so done indulged in defamatory language not germane to the transaction of the business for which the meeting was held, or if in good faith he obtained a conference to negotiate a settlement and in the course of the negotiations made slanderous criminatory accusations against the plaintiff which were not pertinent, and yet could have done all that his duty or interest demanded without thus slandering him (Newell, Slander and Libel, 509; Smith v. Smith, 73 Mich. 445, 41 N. W. 499, 3 L. R. A. 52, 16 Am. St. Rep. 594), or if having thus induced a conference, without an honest effort to compromise, from a spiteful and malicious feeling, he accused the plaintiff of criminal wrongdoing and resorted to intimidation and threats to secure a dismissal of the then pending suit, he abused the occasion and destroyed the privilege, and a malicious intent in the making of his statements would be inferable by law.

[11-13] The occasion being privileged, the communication did not amount to actionable defamation until it appeared that it had its origin in actual malice. Lea v. White, 4 Sneed (Tenn.) 111, 113; Newell, Slander and Libel, 391. It was therefore incumbent on the plaintiff to show such malice in addition to injurious utterances, and that the defendant seized upon the occasion as a pretext or otherwise availed himself of it maliciously in fact to slander him. Crockett v. McLanahan, 109 Tenn. 517, 522, 72 S. W. 950, 61 L. R. A. 914; Shadden v. McElwee, 86 Tenn. 146, 151, 5 S. W. 602, 6 Am. St. Rep. 821; Folkard's Starkie, Slander and Libel, § 670; Townsend, Slander and Libel, 349, 350; Newell, Slander and Libel, 389; Dunn v. Winters, 2 Humph. (Tenn.) 512; Mattson v. Albert, 97 Tenn. 232, 36 S. W. 1090; White v. Nicholls, 3 How. 266, 11 L. Ed. 591; National Cash Reg. Co. v. Salling, 173 Fed. 22, 28, 97 C. C. A. 334 (C. C. A. 9). In Saunders v. Baxter, 6 Heisk. 382, the Tennessee court thus quotes with approval the clear statement made in Wright v. Woodgate, 2 Cromp. M. & R. 573:

"A privileged communication means nothing more than the occasion of making it rebuts the prima facie inference of malice arising from the publication of matter prejudicial to the character of the plaintiff, and throws upon him the onus of proving malice in fact, but not of proving it by extrinsic evidence only; he has still the right to require that the alleged libel

itself shall be submitted to the jury that they may judge whether there is evidence of malice on the face of it."

The presumption of freedom from malice running in favor of the defendant, the burden of proving that he did not abuse his privilege did not rest on him. On the contrary, the burden was on the plaintiff to prove malice in fact, which might be done not only by extrinsic evidence of personal ill feeling but also by intrinsic evidence, such as the original language of the slander, the mode and extent of the publication, and other matters in excess of the privilege. Any other words spoken by the defendant of the plaintiff and indeed all previous transactions or communications between the parties were competent on such issue. Newell, Slander and Libel, 770. If plaintiff's evidence fell short of establishing actual malice, the defendant was not called upon to answer as to that issue. If his evidence tended to show such malice, the defendant, to avoid an adverse verdict, was required to meet it but not to overcome it by a preponderance of the evidence. If the defendant's evidence was merely sufficient to counterbalance that of the plaintiff, or if the evidence adduced was, as a whole, equally consistent with either the existence or nonexistence of such malice, there was then nothing to rebut the presumption which existed in favor of the defendant from the privileged occasion. Odgers, Libel and Slander, 345; Newell, Slander and Libel, 324. The portion of the charge above considered contains prejudicial error.

[14] At an early stage of the trial, when plaintiff's evidence was coming in, the court said in the presence of the jury that he did not think the proof showed the language attributed to the defendant in such second conversation was to such an extent within the scope of the interview and the object for which it was held as to prevent its being a publication. No subsequent allusion was made to this statement. It was in effect an announcement of the court's opinion that the defendant's language was not privileged and was consequently slanderous and malicious in fact. We fear that this unqualified declaration on a question whose decision was within the province of the jury must have operated to the defendant's prejudice.

As regards the first conversation at Hatcher's office, the court charged the jury that as the defendant, after the suit for breach of contract had been instituted against him, went to the office of the Hatchers voluntarily and not at their instance or suggestion, no element of privilege attached to such conversation, and that if he there made the statements attributed to him, and if they were in substance such as referred to the embezzlement and misappropriation of funds and the obtaining of money under false pretenses, there was then, on account of them, a right of action against him in favor of the plaintiff. To this portion of the charge the defendant excepted.

[15, 16] E. H. Hatcher's evidence, notwithstanding the uncertainty of his recollection, that the defendant's express purpose in voluntarily coming to his office was to employ him as an attorney justified the admission of the conversation, but the subsequent evidence of the defendant that his visit was made to bring about a settlement of the then pending suit and the fact that at that time a subsequent meeting

of the parties was arranged for that purpose injected into the case a question of fact for the jury's determination. That the communication was voluntarily made did not necessarily render it nonprivileged. A communication is privileged within the rule, when made in good faith, in answer to one having an interest in the information sought; it is also privileged, if volunteered, if the party to whom the communication is made has an interest in it, and the party by whom it is made stands in such relation to him as to make it a reasonable duty, or at least proper, that he should give the information. Locke v. Bradstreet Co. (C. C.) 22 Fed. 772, 773; Erber v. Dun (C. C.) 12 Fed. 526; Sunderlin v. Bradstreet, 46 N. Y. 191, 7 Am. Rep. 322; Missouri Pac. Ry. Co. v. Richmond, 73 Tex. 568, 11 S. W. 555, 4 L. R. A. 280, 15 Am. St. Rep. 794, 798, 801; Fresh v. Cutter, 73 Md. 87, 20 Atl. 774, 10 L. R. A. 67, 25 Am. St. Rep. 575. If the jury accepted the defendant's evidence as to the object of his visit, his statements, if germane to the subject of discussion, were innocent and privileged, but if he transcended the bounds of his privilege to indulge in language not pertinent to the occasion and subject-matter and of a slanderous character, the protection of the privilege was lost. If his language was such as the jury might properly have found to be defamatory of the plaintiff, both of the above phases of the situation should have been presented to it in the charge.

[17, 18] No specific and perhaps no adequate exception was taken to that portion of the charge which left it to the jury to determine whether the defendant's statements made at such first conversation were of the character alleged in the declaration regarding embezzlement and misappropriation of funds and the obtaining of money by false pretenses; but, as the case must be retried, we are constrained to say that, while the evidence of such conversation was competent as leading up to the second interview, it fails to show any utterances such as are made the basis of the plaintiff's complaint. No mention of any accusation on the part of the defendant is made by C. P. Hatcher, and E. H. Hatcher's version of the conversation is a recital not of the language employed by the defendant but of his conclusion as to its import. He explicitly states that the defendant made no direct charges against the plaintiff. If we misinterpret his evidence, and if the defendant did call the plaintiff a "rascal," the application of that term to him was not, in the absence, as here, of proof of special damages, slanderous (Cooley on Torts [3d Ed.] 393, 401), although had the charge been in writing it would have been libelous. Williams v. Karnes, 4 Humph. (Tenn.) 9; Newell, Slander and Libel, 48.

[19, 20] Error cannot be predicated on the court's statement and its earlier direction that proof of the substance of the statements set forth in the declaration is sufficient, for the reason that, when its attention was called to the language thus inadvertently employed, it broadly and favorably to the defendant instructed the jury that the proof must show that the alleged slanderous utterances were made in the exact language charged in the declaration in order to warrant a recovery. The plaintiff was not required to prove all the words laid in the declaration unless it took all of them to constitute the cause of

action, but he was required to prove enough of them to entitle him to the relief sought. Roberts v. Lamb, 93 Tenn. 343, 27 S. W. 668; Hancock v. Stephens, 11 Humph. (Tenn.) 508; Robinson v. Van Auken, 190 Mass. 161, 166, 76 N. E. 601; Broughton v. McGrew, 39 Fed. 672, 674, 5 L. R. A. 406; Linville v. Earlywine, 4 Blackf. (Ind.) 469.

It is alleged that the court erred in announcing the rule as to mitigation of damages in that, briefly stated, it told the jury that, if it found that the defendant made the remarks attributed to him and that they were not privileged, the plaintiff was entitled to actual compensation regardless of the defendant's good faith and of actual malice; that, if he had a reasonable ground to believe from plaintiff's previous conduct, that his statements were true, that fact would rebut any inference or proof of malice, and a recovery of punitive damages could not then be had, but that the existence of such reasonable ground would not affect the question of compensatory damages; and that provocation induced by plaintiff's conduct, although to be considered on the questions of actual malice and punitive damages, did not affect the question of compensatory damages.

[21, 22] As the existence of malice in fact was essential to a recovery on the utterances alleged to have been made at the second interview at Hatcher's office, the plaintiff was left remediless as to them, if such malice was rebutted. If, however, the defendant was guilty of only malice in law in any utterances he may have made at the Fair Grounds, he was liable in damages. The two conversations do not stand upon the same plane, because the former occasion was privileged and the latter was not. It was the court's duty to charge the law arising upon the facts as applicable to such facts so as to aid the jury in arriving at a correct conclusion. Hackett v. Brown, 2 Heisk. (Tenn.) 264, 271.

[23] Good faith, honesty of purpose, and provocation due to a plaintiff's conduct may minimize and fix the degree of malice and thus operate to fix the amount of actual damages. Odgers, Libel and Slander, 398, states the rule applicable in all cases of slander to be that:

"Where the occasion is privileged, the motive or intention of the speaker is material to the right of action. In all cases the absence of malice, though it may not be a bar to the action, may yet have a material effect in reducing the damages. The plaintiff is still entitled to reasonable compensation for the injury which he has sustained; but if the injury was unintentional or was committed under a sense of duty, or through some honest mistake, clearly no vindictive damages should be given. In every case, therefore, the defendant may, in mitigation of damages, give evidence to show that he acted in good faith and with honesty of purpose and not maliciously."

[24] In the early and leading case of West v. Walker, 2 Swan, 32, 33, the Tennessee court held that it was competent for the defendant in a slander suit under the general issue to show that the charge was occasioned by the misconduct of the plaintiff either in attempting to commit the crime or leading the defendant to believe him guilty of it. That case established the local rule that a defendant is permitted under the general issue to introduce testimony which does not amount to justification in mitigation of damages (Haws v. Stanford, 4 Sneed

[Tenn.] 520, 524), to rebut the malice with which it might otherwise be presumed the defendant's words were uttered. Shirley v. Keathy, 4 Cold. (Tenn.) 29, 31. In Hackett v. Brown, in which the matter of provocation and anger as mitigating circumstances was under consideration, it was said that there is a wide difference between malicious and remorseless slander and works spoken in the heat of blood and under provocation, and that a jury in fixing the measure of damages should be permitted to consider all the circumstances of mitigation as well as of aggravation. The record suggests that both parties were angry; that both were accustomed to indulge at times in offensive language; and that, viewed from the defendant's standpoint, there was much to arouse his indignation and his belief of want of good faith and fair dealing on the part of the plaintiff.

[25, 26] We conceive the rule to be that the amount of damages should be governed or graduated by the degree of malice by which a defendant was actuated (Huson v. Dale, 19 Mich. 16, 30 [top paging], 2 Am. Rep. 66), and that, if his malice may be punished by the imposition of smart money, then malice or misconduct on the part of the plaintiff which provoked anger and passion and the injury of which he complains, and a reasonable belief on the part of the defendant that the charges were true, should also be punished by withholding, to the extent which the circumstances warrant, the damages to which he would otherwise be entitled. A plaintiff who so deports himself has less to lose in the way of reputation and consequently sustains less actual damage than a person who does not thus misbehave. Nothing should be received in mitigation of compensatory damages which does not tend to show what those damages actually were, and where actual damages are once ascertained they cannot be mitigated, though they are to be determined in view of all mitigating circumstances. Sedgwick on Damages (9th Ed.) § 448; Cheadle v. Buell, 6 Ohio, 67; Wilson v. Apple, 3 Ohio, 270; Haywood v. Foster, 16 Ohio, 88; Ritchie v. Stenius, 73 Mich. 563, 567, 568, 41 N. W. 687; 25 Cyc. 417; 18 Am. & Eng. Ency. Law, 1107 et seq. The instruction as to mitigation of damages should have been in accordance with the foregoing.

[27] The court very properly, considering the state of the record, refused to sustain the verdict unless the plaintiff remitted a large portion of the damages awarded by the jury. It is urged that it should have set aside the verdict and awarded a new trial, because the verdict was so excessive as to indicate passion and prejudice on the part of the jury. The course pursued is supported by both state and federal authority. Packet Co. v. Hobbs, 105 Tenn. 29, 46, 58 S. W. 278; Northern Pac. R. R. Co. v. Herbert, 116 U. S. 642, 646, 647, 6 Sup. Ct. 590, 29 L. Ed. 755.

[28] The defendant complains that, over his objection and exception, the plaintiff was permitted to offer evidence in chief that his general reputation for truth, integrity, and fair dealing is good. Whether thus to admit evidence of that character, under pleadings and circumstances such as are here presented, constitutes reversible error or not is a controverted question. Some of the authorities

which have answered it in the affirmative are Martin v. Hooker, 7 Cold. (Tenn.) 130; Chubb v. Gsell, 34 Pa. 114; Burkhart v. N. Am. Co., 214 Pa. 39, 42, 43, 63 Atl. 410; Blakeslee v. Hughes, 50 Ohio St. 490, 34 N. E. 793; Cooper v. Phipps, 24 Or. 357, 33 Pac. 985, 22 L. R. A. 836; Rhodes v. Ijames, 7 Ala. 574, 42 Am. Dec. 604. And see, also, as reflecting on the question, McCabe v. Platter, 6 Blackf. (Ind.) 405; Newell, Slander and Libel, 771; 5 Am. & Eng. Ency. Law, 852. To the contrary are Bennett v. Hyde, 6 Conn. 24; Adams v. Lawson, 17 Grat. (58 Va.) 250, 94 Am. Dec. 455; Williams v. Haig, 3 Rich. (S. C.) 362, 45 Am. Dec. 774; Shroyer v. Miller, 3 W. Va. 158, 161; Stafford v. Morning Journal, 142 N. Y. 598, 37 N. E. 625; Sutherland on Damages, §§ 1210, 1211. We do not find it necessary to determine the question. As the case must be retried and as the plaintiff will have the undoubted right to rebut any assault made on his character by the defendant, we content ourselves by saying that it was not necessary to make such proof in chief; the presumption of law being in favor of plaintiff's good character until it was legally impeached. To say the least of this kind of evidence so offered, it is generally unnecessary and, if allowed, may tend inconveniently to procrastinate trials.

[29] The court received the evidence of the deputy sheriff regarding his conversation with the defendant subsequent to the commencement of the present action, not as a basis of damages, but merely as an admission that the defendant on the morning of the day in question applied an epithet to the plaintiff. Error is predicated on its introduction. If the defendant made such an admission it was not that of an actionable slander, because there is no evidence that any one heard the original utterance. The evidence of both the plaintiff and the defendant and by necessary inference that of the Hatchers also distinctly negatives a meeting on that day between the parties to this action prior to that held in the afternoon at Hatcher's office, and consequently the occurrence of an incident such as the deputy sheriff says the defendant admitted. It is difficult to believe that the plaintiff would have consented to meet the defendant to compromise their differences had he previously been denounced as a thief and slapped in the face by the latter. The admission attributed to the defendant does not relate to any occurrence or utterance concerning which evidence was given. The evidence of the deputy sheriff was, however, competent, but for the sole purpose of showing the animus of the defendant. Newell, Slander and Libel, 331; 8 Ency. Ev. 268; Townsend, Slander and Libel, §§ 390, 394. What was in the defendant's mind when he is alleged to have made the slanderous utterances charged in the declaration was one of the questions involved. Although his acts and words on those occasions are the best evidence on this point, still if he afterward gave expression to an ill feeling, such expression is to be received for what it is worth in pointing to his motive at the respective times of publication laid in the counts. Knapp v. Fuller, 55 Vt. 311, 45 Am. Rep. 618. It was for the jury to say, under proper instructions from the court, what it would do with the evidence given by the deputy sheriff.

Having discussed what we believe to be the material points in issue, other assignments of error will not be considered. We wish, however, to add the caution that any allusions we have made to the evidence relate only to the record before us, and that we do not undertake to do more than lay down general propositions, leaving the terms in which they should be submitted at a new trial, if one occurs, and also the limitations and explanations thereof, to be then settled as the actual facts then develop.

The judgment is reversed, with costs, and the case remanded for retrial.

WARRINGTON, Circuit Judge. I concur in the judgment of reversal.