GRAND UNION TEA CO. v. LORD.

(Circuit Court of Appeals, Fourth Circuit. March 1, 1916.)

No. 1373.

1. CORPORATIONS ⊜⟶423—LIABILITY FOR AGENT'S TORTS—SLANDER.

A corporation is liable for the slanderous words of its agent if the agent at the time is transacting its business and the slanderous words are spoken in the course of such business and in connection therewith.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1692–1695, 1903, 1906; Dec. Dig. ⊜⟶423.]

2. CORPORATIONS ⊜⟶423—LIABILITY FOR AGENT'S TORTS—SLANDER.

Plaintiff was in charge of one of defendant's stores, and while defendant's manager was making an inventory left the store without explanation. M., a friend of plaintiff, stopped at the store and inquired for him, and the manager told him that plaintiff had acted in a very peculiar way and went off without saying anything, and that his stock and his cash were short. Held, that defendant was liable for the manager's language, as he was engaged in its business and acting in its behalf when the words were spoken and they referred to plaintiff's acts in the work for which he was employed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1692–1695, 1903, 1906; Dec. Dig. ⊜⟶423.]

3. LIBEL AND SLANDER ⊜⟶54—DEFENSES—JUSTIFICATION.

Proof of the truth of the words spoken is a good defense in an action for slander, but the justification must be as broad and complete as the misconduct charged.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 152; Dec. Dig. ⊜⟶54.]

4. LIBEL AND SLANDER ⊜⟶123(7)—ACTIONS—QUESTIONS FOR JURY.

In an action for slandering plaintiff, who was in charge of one of defendant's stores, by saying that his stock and cash were short, evidence held insufficient to show that his stock was short, or that there was a shortage in the cash, at least in such amount as would justify the inference that he had misappropriated the money, with such a degree of certainty as to warrant the court in holding as matter of law that the

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

language complained of was true, and hence the direction of a verdict for defendant was properly denied.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 361 : Dec. Dig. ☞123(7).]

5. LIBEL AND SLANDER ☞44(1)—PRIVILEGED COMMUNICATIONS—DISCHARGE OF DUTY.

Plaintiff was in charge of one of defendant's stores, and V. was defendant's general manager in charge of the territory, including such store. While V. was taking an inventory, plaintiff left the store without explanation, and did not return that day. M., a familiar friend of plaintiff, with whom plaintiff lived, called at the store and inquired for plaintiff, and V. told him that plaintiff had acted in a very peculiar way, and had gone off without saying anything, and that his stock and his cash was short. *Held*, that while, it was perhaps not unnatural for V. to tell M. of the shortage, he owed no duty to M. to make such statement, and there was no basis for a claim of privilege.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 133, 134; Dec. Dig. ☞44(1).]

6. APPEAL AND ERROR ☞1064(2)—LIBEL AND SLANDER ☞124(4)—ACTIONS—INSTRUCTIONS—PREJUDICIAL ERROR.

In an action for slandering a person in charge of a store by saying that his cash and stock were short, it was error and prejudicial to charge that, if defendant's manager spoke of plaintiff the defamatory words charged in the declaration under circumstances alleged, and if such words were false, then a recovery might be had, as it was for the jury to determine whether the language used was an accusation of crime or the imputation of conduct amounting only to irregularity or negligence, and the instruction in effect told the jury that the words spoken necessarily imputed the commission of a crime and were actionable per se, especially where the court further charged that if the manager slandered plaintiff as charged in the declaration, defendant was liable, and refused to charge that if the language used did not, according to its fair meaning under the circumstances, charge plaintiff with larceny, or if the hearers did not understand that it charged him with larceny, but that it simply charged him with some improper, negligent, or careless act, not amounting to larceny, then defendant was not guilty.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4221, 4222; Dec. Dig. ☞1064(2); Libel and Slander, Cent. Dig. § 366; Dec. Dig. ☞124(4); Trial, Cent. Dig. §§ 475, 480, 525, 526, 553, 558.]

7. TRIAL ☞296(1)—LIBEL—INSTRUCTIONS—CURE OF ERROR.

Such error was not cured by charging that, in determining whether or not the language used imputed a criminal offense, the words must be construed in their plain and popular sense, and that it was not necessary that the manager should have expressly charged plaintiff with larceny or a breach of trust, but that it was sufficient if the charge consisted of a statement of matters which would naturally and presumably be understood by those hearing them as charging a crime or breach of trust, or as affecting plaintiff in his trade or calling, as this implied that the words were slanderous in their plain and popular sense, and failed to make it clear to the jury that the meaning of the words was for their determination.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–707; Dec. Dig. ☞296(1).]

8. LIBEL AND SLANDER ☞124(4)—ACTIONS—INSTRUCTIONS.

In an action for slandering a person in charge of a store by saying that his cash and stock were short, an instruction that it was sufficient to constitute slander if the words were naturally and presumably understood to charge a crime or breach of trust or to affect plaintiff in his

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

calling, was erroneous, as words not slanderous, but merely derogatory, would tend to affect plaintiff in his trade or calling.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 366; Dec. Dig. ☞124(4).]

9. LIBEL AND SLANDER ☞124(2)—ACTIONS—INSTRUCTIONS.

Plaintiff was in charge of one of defendant's stores, and claimed that, while defendant's manager was making an inventory he told a friend of plaintiff, who inquired for plaintiff, that plaintiff was short in his cash and stock. Defendant requested an instruction, stating plaintiff's claim, and stating that defendant claimed that M., to whom the alleged slanderous statement was made, was a friend of plaintiff and lived in the same house with him; that defendant's manager was endeavoring to locate plaintiff and get some explanation of his conduct, and that the statement as to the shortage was true, and made in good faith and without malice; that proof of the truth of the statement was a complete defense; that the burden was on plaintiff to establish his case, and he must show that defendant used the language charged, and the jury must believe this language, if true, to be slanderous, or such as from its usual import was insulting and calculated to cause a breach of the peace, or there could be no recovery; and that if, after hearing the evidence, the jury believed the stock was short and the cash was also short, the verdict must be for defendant, whether the shortage was due to carelessness, ignorance, lack of attention, dishonesty, or other cause. *Held*, that this instruction, in substance, should have been given, as it presented defendant's theory of the case, and contained nothing objectionable, either as to matters of fact in the aspect of the facts claimed by defendant or as to the applicable rules of law, and it included propositions which defendant was entitled to have submitted when not covered by the instructions given.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 370; Dec. Dig. ☞124(2),]

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Action by I. C. Lord against the Grand Union Tea Company. Judgment for plaintiff, and defendant brings error. Reversed.

R. Randolph Hicks, of Norfolk, Va., for plaintiff in error.

Allan D. Jones and S. O. Bland, both of Newport News, Va., for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. The plaintiff in error, defendant below and hereinafter so called, conducts a large number of stores in different parts of the country. The territory in which it operates is divided into divisions, one of which, with headquarters at Washington, included the store at Newport News, Va. The general manager of this division was C. C. Van Allen, who lived in Washington. It was his duty, among other things, to take an inventory at least twice a year of the stores under his supervision, and he had authority to hire and discharge employés. The management of the business in his division, at least in large degree, was subject to his control. From January, 1913, until the 20th or 21st of April, 1914, the plaintiff, Lord, was in charge of the Newport News store. Van Allen visited this store, and took an inventory about the 7th of January, 1914, and found a shortage in the stock, as he asserts, of about $500. He took another in-

ventory on the 11th of February, and discovered a further shortage of upwards of $700, which had accrued since his January visit; but nothing appears to have been done about these shortages, and Lord continued in charge of the store. Van Allen went there again on Monday, the 20th of April, and claims to have found an additional shortage in the stock of 180-odd dollars, and a small shortage in the cash, the amount of which is disputed. This inventory was commenced soon after Van Allen's arrival at the store, and continued throughout the day and evening. It was resumed the next morning, but Lord soon afterwards left the store without explanation, and did not return during that day. In the afternoon some effort was made to locate him, but he was not found. Inquiry was made at his residence, and also at the store of one Moncure, in whose house Lord was living. It seems that Moncure himself had gone to Richmond that day; but he called at defendant's store on his return to inquire if Lord had gone home; and it was for words spoken to him at that time by Van Allen that this suit for slander was brought. At the trial Moncure was a witness for plaintiff and testified as follows concerning the incident:

"I met Mr. Van Allen one afternoon when I came to the store of the Grand Union Tea Company, from Richmond. I stopped by the store, poked my head in, and said—'Has Mr. Lord gone up?' Some one told me he was not there, and then Mr. Van Allen got up and said, 'Is not this Mr. Moncure?' and I told him that was my name. He asked me if Mr. Lord lived at my house, and I told him that he did. He said that Mr. Lord had acted in a very peculiar way, and that he went off without saying anything to us, and, about as I can remember, 'His stock is short and his cash'—he did not say how much—and I remarked, 'I am very much surprised to hear it,' and went home."

The words claimed by Moncure to have been spoken of and concerning Lord on this occasion, namely, "His stock is short and his cash," are substantially the words set out in the declaration and alleged to be actionable. There was a verdict of $2,000 for the plaintiff, and the case comes here on writ of error.

[1, 2] The defendant contends that a verdict should have been directed in its favor for reasons which will be briefly considered. It is argued, in the first place, that defendant, a corporation, is not liable for the alleged slander because the statement concerning Lord was not made by Van Allen in the scope of his employment or in the performance of his duties, and particularly because it was not authorized by the corporation. We deem it unnecessary to review the numerous cases involving the liability of a corporation for the tortious acts of its agent, because the law is well settled that a corporation is liable for the slanderous words of its agent if the agent at the time is transacting the business of the corporation, and the slanderous words are spoken in the course of such business and in connection therewith. Washington Gas Light Company v. Lansden, 172 U. S. 534, 19 Sup. Ct. 296, 43 L. Ed. 543; Stewart v. Wright, quoting many cases, 147 Fed. 321, 77 C. C. A. 499; Waters-Pierce Oil Company v. Bridwell, 103 Ark. 345, 147 S. W. 64, Ann. Cas. 1914B, 837; Hypes v. Southern Railway Company, 82 S. C. 315, 64 S. E. 395, 21 L. R. A. (N. S.) 873, 17 Ann. Cas. 620; Fensky v. Maryland Casualty Company, 264 Mo. 154, 174 S. W. 416; Sun Life Assurance Company v. Bailey,

101 Va. 443, 44 S. E. 692. Van Allen was concededly engaged in the business of defendant and acting in its behalf when the words complained of were spoken, and the words themselves had reference to the acts of Lord in the work for which he was employed. Under the decisions quoted, and many others which have been examined, we are clearly of opinion that the defendant should be held responsible for the language of Van Allen on the occasion in question.

[3, 4] In the second place, it is insisted that the action must fail because the words used by Van Allen were shown to be true. It is of course familiar doctrine that proof of the truth of the words spoken is a good defense in an action for slander. But the justification must be as broad and complete as the misconduct charged in the utterance, and we are convinced, after careful reading of the testimony, that the justification attempted in this case did not reach that degree of certainty and completeness which would warrant the court in holding, as matter of law, that the language complained of was proven to be true. It is enough to say in support of this conclusion that Van Allen, upon whose testimony alone rests the charge of shortage in the stock, did not have that personal knowledge of the facts, particularly as to the January shortage, which enabled him to testify with certainty that such a shortage existed. When this inventory was taken the papers were sent to New York, the main office of the company, for the extensions to be carried out, and Van Allen had notice from New York, some three or four weeks afterwards, that the inventory "did not figure up exactly." He claimed to have himself verified the February inventory, but as this was apparently based on the January figures, its correctness depended upon the unproven accuracy of the previous inventory. Concerning the inventory in progress when the alleged slander was uttered, it is also true, as we understand the record, that Van Allen did not have the personal knowledge necessary to prove the shortage he claimed to have found at that time. It is significant that Lord made no attempt to explain the discrepancy, and there is much ground for belief that the alleged shortage existed; but we think there was lack of sufficient legal proof of the shortage alleged to make out a case of complete justification. Moreover, some circumstances were shown which the jury might properly take into account, such as the retention of Lord in charge of the store for more than three months after a shortage was first claimed to have been found, and the failure then or later to take any proceedings against him or his bondsmen for misappropriating the property with which he was intrusted. Nor in our opinion can it be said that there was convincing proof of a shortage in cash, at least of such amount as would justify the inference that Lord had misappropriated the money, if the language of Van Allen be assumed to impute to him misconduct in that regard. It follows that no error was committed in refusing to direct a verdict for defendant on the ground that the truth of what Van Allen said had been fully established.

[5] The claim that the words spoken to Moncure were a privileged communication, or of that nature, cannot be sustained. It is true that Lord lived in Moncure's house, and the relations between them were

inferentially shown to be those of familiar friendship. In view of this friendship, and, taking into account the circumstances of the situation, it was perhaps not unnatural for Van Allen to tell Moncure that there was a shortage in Lord's stock of goods and cash. But Van Allen owed no duty to Moncure to make such a statement, and we perceive no aspect of the case which brings the words spoken to him within the doctrine of privilege. Dillard v. Collins, 25 Grat. (66 Va.) 343; Farley v. Thalhimer, 103 Va. 504, 49 S. E. 644; Williams Printing Company et al. .v. Saunders, 113 Va. 156, 73 S. E. 472, Ann. Cas. 1913E, 578. So far as this question was involved, we are satisfied that defendant was not entitled to a directed verdict.

[6] The errors assigned which challenge certain instructions to the jury, including those asked by defendant and refused, present a more serious question. As shown by the record, the first proposition submitted to the jury was this:

"The court instructs the jury that if they believe from the evidence that the defendant's manager spoke of the plaintiff the defamatory words charged in the declaration under the circumstances stated in the defendant's plea of justification, and that such words were false, then a recovery may be had."

By thus characterizing the words spoken as "defamatory," the court in effect held that they necessarily imputed the commission of a criminal offense, and were therefore actionable per se. We are unable to sustain this instruction. It seems to us by no means certain that the language of Van Allen implied the commission of a crime, or were so understood by Moncure. The circumstances attending the utterance were such that Moncure might have inferred that no more was meant than a discovered variance between the amount of stock on hand and the amount that ought to be on hand according to the books. In other words, the shortage mentioned might have been understood to be merely a discrepancy, resulting from carelessness or unintentional error, which called upon Lord for explanation. It was therefore a question for the jury to determine whether the language used was an accusation of crime or the imputation of conduct which amounted only to irregularity or negligence. Especially is this so, as it seems to us, since Moncure did not state, and apparently was not asked, what construction he himself put upon the language of Van Allen. And the misleading effect of the word "defamatory" is made more evident by the refusal of the court to give the following instruction requested by defendant:

"The court instructs the jury that if defendant's language used on the occasion complained of, taken as a whole, and all of it, did not, according to its fair meaning under the circumstances, charge plaintiff with larceny, or, if the hearers did not understand that it charged him with larceny, but that it simply charged him with doing some improper, negligent, or careless act, not amounting to larceny as the hearers understood it, then defendant is not guilty, for then he would not charge plaintiff with crime, and the charge of crime is the gist of the slander alleged."

Taking these instructions together, the one given and the one refused, the jury were virtually told that Van Allen's statement imputed to Lord the commission of a crime, and that Lord would be en-

titled to damages if they found that Van Allen actually used the language testified to by Moncure. Indeed, the jury were not left in doubt upon this point, because the court further instructed the jury as follows:

"The court instructs the jury that if they believe from the evidence that, acting within the scope of Van Allen's authority as an agent of the defendant company and in the course of the business in which said Van Allen was employed by said defendant, the said Van Allen slandered the said plaintiff as charged in the declaration, then the defendant is liable therefor, and the jury, in determining this question of the defendant's liability, may consider the plea of justification, if not sustained, and all facts and circumstances shown in evidence in this case."

As already indicated, we are of opinion that in the circumstances shown the words spoken did not necessarily convey the idea that Lord had stolen or embezzled the defendant's property; that the meaning and intent of Van Allen's language as understood by Moncure was a question of fact for the jury to pass upon, and therefore the instructions here considered were erroneous and prejudicial.

[7, 8] We do not overlook the statement in the charge—

"that in determining whether or not the language used does impute a criminal offense, the words must be construed in the plain and popular sense in which the rest of the world naturally understand them."

But this statement, as we take it, implied that the words spoken were slanderous in their "plain and popular sense," and failed to make it clear to the jury that the meaning of the words was for their determination. It is also noted that the language just quoted was followed with this amplification:

"It was not necessary that Van Allen should have expressly charged Lord with the larceny of the money and goods, or a breach of trust; it is sufficient if the publication or charge consists of a statement of matters which would naturally and presumably be understood by those who heard them to charge a crime, or breach of trust, or to affect Lord in his trade or calling."

But this does not avoid the criticism already made, because it carries the implication that the words spoken would "naturally and presumably be understood" to impute a criminal offense, and does not distinctly, if at all, leave to the jury the question whether the language of Van Allen should receive that construction. Besides, the concluding phrase of this instruction is clearly erroneous for the reason that words which are not slanderous, but merely derogatory, would tend "to affect Lord in his trade or calling."

[9] We are also of opinon that defendant was entitled to the substance of the following instruction which the court refused:

"The jury are instructed that this is an action on the part of Lord to recover damages. Lord claims that Van Allen, his superior officer in the Grand Union Tea Company, made a statement to R. O. L. Moncure that the stock in the store of the Grand Union Tea Company in Newport News, Va., and of which Lord was manager, was short, and that the cash in said store was also short. The defendant claims that Moncure was a friend of Lord and lived in the same house with him, and that Van Allen was endeavoring to locate Lord and get some explanation of his conduct, and that the statement made by Van Allen to Moncure as to the shortage in the stock and shortage in the cash was true, and was made in good faith and without malice. In actions

of this character, proof of the statement of which complaint is made, if true, is a complete defense. To slander a person implies a false statement about them, and a true statement of and concerning a person is not an insult for which there can be a recovery. The burden is on the plaintiff to establish his case; he must show that the defendant used the language set out in the declaration, and the jury must believe this language, if true, to be slanderous, or such as from its usual import is insulting, and calculated to cause breach of peace, before there can be any recovery. If, after hearing the evidence, the jury believe that the stock mentioned was short, and the cash mentioned was also short, then the verdict must be for the defendant, whether said shortage was due to carelessness, ignorance, lack of attention, dishonesty, or other cause."

We express the opinion that this instruction, in substance, should have been given, because it presents the defendant's theory of the case. We find nothing in it that appears objectionable either as to matters of fact, in the aspect of the facts claimed by defendant, or in that aspect as to the applicable rules of law; and it includes propositions which the defendant had the right to have submitted to the jury, but which are not covered by the actual instructions.

For these reasons we are constrained to hold that the judgment should be reversed.