### BUCKEYE COTTON OIL CO. v. SLOAN.

(Circuit Court of Appeals, Sixth Circuit. April 12, 1918.)

No. 2919.

1. JUDGMENT ☞175—OPENING DEFAULT—DEFENSES AFTER OPENING DEFAULT.

After defendant filed its petition to remove a cause to the federal court, plaintiff filed his declaration without notice to defendant, and such declaration was included in a copy of the record. Defendant having failed to answer the same, default was entered against it; the same being set aside on the express condition that defendant should file its pleas within five days thereafter. *Held*, that such consent on the part of defendant was an election to treat the declaration as properly filed, and a waiver of its right to make defense thereto otherwise than by filing pleas as specified.

2. APPEAL AND ERROR ☞1043(1)—REVIEW—HARMLESS ERROR.

Where defendant was denied leave to file preliminary motions before filing its pleas in accordance with a stipulation made when its default was set aside, but the withdrawal of certain counts of the declaration gave defendant every advantage the motions would have given it, the denial of leave was harmless if erroneous.

3. TRIAL ☞343—GENERAL VERDICT—CONSTRUCTION.

Where the court submitted two counts of the declaration to the jury and directed that if they found for plaintiff on both counts they should assess the damages under both as one sum, separating only compensatory and punitive damages, but, if under one count only, they should state under which and assess the damages thereunder, a general verdict for plaintiff in which only compensatory and punitive damages were separated must be treated as a verdict on both counts.

4. PLEADING ☞115—SLANDER—PLEA OF JUSTIFICATION—NECESSITY.

Under Shannon's Code Tenn. § 2910 (Thompson & S. Code, § 4631), declaring that all allegations in a declaration not denied in the plea shall be taken as true, the falsity of charges set up as the basis of an action of slander were admitted where defendant pleaded the general issue merely, with no plea of justification.

5. LIBEL AND SLANDER ☞100(8)—PROOF—SUFFICIENCY.

In an action for slander, proof of words different from those alleged, though equivalent or of similar import, is not sufficient, but it is sufficient if the words proven correspond substantially with those alleged.

6. LIBEL AND SLANDER ☞100(7)—PLEADING—FELONIES.

In an action for slander, plaintiff is not required to prove all the words alleged; it being sufficient if he prove enough of the language alleged to constitute a cause of action.

7. LIBEL AND SLANDER ☞123(3)—ACTIONS—JURY QUESTIONS.

In an action for slander where the falsity of the charges averred was admitted by the pleadings, the question whether those charges shown to have been uttered imputed to plaintiff the commission of felonies involving moral turpitude as set forth in innuendoes is for the jury.

8. LIBEL AND SLANDER ☞7(12)—WORDS ACTIONABLE—DEFENSES.

A charge of embezzlement made in Tennessee is slanderous. even though under the Tennessee statutes restitution is a defense to criminal prosecution, the case being analogous to one where the commission of a crime barred by limitations is charged.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. **CORPORATIONS** ⊕⇒423—ACTS OF AGENT—LIABILITY OF CORPORATION.
    A corporation is liable for a slander by its agent when uttered within the scope of his employment and in the performance of his duties in the course of transacting the business of the corporation.

10. **CORPORATIONS** ⊕⇒432(6)—ACTS OF AGENT—LIABILITY OF CORPORATION.
    In case of libel and slander, as in other torts, the authority of a corporate agent to utter a slander, or publish a libel, can be shown by evidence of facts from which authority can be fairly and legitimately inferred, and it need not be in writing under seal, or given by vote of the corporation.

11. **CORPORATIONS** ⊕⇒433(1)—ACTIONS—EVIDENCE—SUFFICIENCY.
    In an action against a corporation for a slander uttered by its agent, evidence *held* sufficient to warrant a finding that the slander was uttered by the agent in the course of his employment, and to carry the case to the jury on that theory regardless of any question of ratification.

12. **LIBEL AND SLANDER** ⊕⇒123(7)—DAMAGES—MITIGATION—JURY QUESTION.
    While, under the Tennessee decisions, defendant in a libel suit may show in mitigation of damages that the charge was occasioned by plaintiff's own misconduct, such evidence does not warrant withdrawal of the case from the jury, for the questions of the sufficiency of the mitigating evidence, as well as the amount by which the damages should be reduced, are for the jury.

13. **CORPORATIONS** ⊕⇒423—AGENT—AUTHORITY OF—COURSE OF EMPLOYMENT.
    Where an agent of a corporation in a purely social conversation with a personal friend charged plaintiff with defalcations from the corporation, such charge was not made within the scope of the agent's authority and will not support a slander suit against the corporation.

14. **APPEAL AND ERROR** ⊕⇒1062(1)—REVIEW—VERDICT.
    Where, in a slander suit, one of the two counts should not have been submitted, and the verdict was general and no apportionment was possible, a judgment for plaintiff must be reversed, and a new trial granted.

15. **APPEAL AND ERROR** ⊕⇒231(3)—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.
    An assignment of error complaining of the admission of evidence on a ground of objection not urged in the court below is not well taken.

16. **APPEAL AND ERROR** ⊕⇒1048(5), 1051(3), 1053(1)—REVIEW—HARMLESS ERROR.
    Plaintiff in error cannot complain of the mode of proving a fact which it specifically admitted, of the admission of evidence subsequently withdrawn from the jury, or of the overruling of an objection to a question, where the witness answered in the negative, for such rulings were harmless.

17. **APPEAL AND ERROR** ⊕⇒260(3)—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—EXCEPTIONS—NECESSITY.
    An assignment of error complaining of the admission of evidence is not well taken where no exception thereto was reserved below.

18. **WITNESSES** ⊕⇒393(1)—BEST EVIDENCE—TESTIMONY OF WITNESS.
    Though testimony of a witness given on another occasion was transcribed in book form, yet, as the witness did not testify by deposition, such transcript did not become the best evidence, and oral evidence of his testimony was admissible.

19. **CORPORATIONS** ⊕⇒432(11)—EVIDENCE—ADMISSIBILITY—RATIFICATION.
    While self-serving declarations are ordinarily inadmissible, a letter to the president of the defendant corporation bringing home to him plaintiff's claim that a corporate agent had circulated slanders against him is admissible on the question whether the corporation ratified the acts of such agent.

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

20. LIBEL AND SLANDER ⬤➡110(1)—EVIDENCE—ADMISSIBILITY.

Where plaintiff while managing a cotton seed oil mill for defendant corporation used its funds for purchase of cotton futures and, such purchases resulting in loss, he was charged with defalcations, evidence as to the trade customs of cotton seed oil mills to protect purchasers of seed cotton by the purchase of· cotton futures as hedges, was admissible in an action against the corporation for slander; it appearing that the corporation in that action asserted that plaintiff was a defaulter and attacked the good faith of the purchases.

21. LIBEL AND SLANDER ⬤➡107(4)—EVIDENCE—ADMISSIBILITY.

In an action for slander where the evidence was sufficient to warrant the submission to the jury of the question of punitive damages, evidence as to the amount invested in defendant's business was admissible on that question.

22. LIBEL AND SLANDER ⬤➡110(3)—EVIDENCE—GOOD CHARACTER.

In a suit for an alleged slanderous charge that plaintiff was defaulter, rebuttal evidence as to plaintiff's good reputation before the utterance of the slander was admissible, where, though no plea of justification was filed, the defendant proceeded on the theory that the charge was true.

23. CORPORATIONS ⬤➡513(4) — ACTIONS — ACT OF AGENTS — RATIFICATION — PLEADING.

Ratification, being retroactive in its effect and equivalent to original authority, need not be pleaded in an action against a corporation for a slander uttered by its agent; it being admissible under a general averment of authority.

24. CORPORATIONS ⬤➡433(2)—ACTS OF AGENT—RATIFICATION—SILENCE.

Silence of a principal, though a corporation, after knowledge of the unauthorized act of an agent, may in connection with other circumstances be sufficient evidence of ratification to take the case to the jury.

25. TRIAL ⬤➡423—INSTRUCTIONS—OBJECTIONS.

In an action against a corporation for a slander uttered by its agent, the corporation having requested a special instruction on ratification cannot complain of the charge relating thereto on the ground that the ratification was neither averred nor proven.

26. TRIAL ⬤➡219—INSTRUCTIONS—GENERAL INSTRUCTIONS.

Where it was asserted that a corporation was liable on the theory of ratification for a slander uttered by its agent, a charge on the question of ratification should explain the essential elements involved as applied to the facts of the controversy.

27. CORPORATIONS ⬤➡426(9)—ACTS OR AGENTS—RATIFICATION.

Where plaintiff sued a corporation for slander based on a charge made against him by a corporate agent while endeavoring to obtain a settlement of plaintiff's supposed shortage, the corporation was not liable on the theory of a ratification of its agent's statement unless the agent made the statement while purporting to act for the corporation, and it with full knowledge that he had purported to so act either expressly or impliedly approved and adopted the agent's mission.

28. CORPORATIONS ⬤➡432(12)—RATIFICATION—WHAT CONSTITUTES.

Where plaintiff asserted that defendant corporation ratified a charge made against him by a corporate agent, the fact that the defendant corporation thereafter reiterated the charge does not itself show ratification, but is merely evidence. bearing on the question whether defendant intended to ratify and adopt the act of its agent.

29. APPEAL AND ERROR ⬤➡232(3)—REVIEW—HARMLESS ERROR—LIMITED EXCEPTIONS.

Where defendant excepted to a charge that there is a presumption that the testimony of a witness having peculiar knowledge, which was withheld, would not support the contention of the party withholding it, on the ground that the charge applied to one of its agents, but it appeared that

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the designated agent took the stand and fully testified, neither the propriety of the charge as a general statement, nor whether it was prejudicial to defendant as referring to another agent who did not in fact testify, need be reviewed.

30. CORPORATIONS ⊂⇒423—AGENTS—SLANDER.

Liability of a corporation for slanderous charges uttered by its agent does not depend upon express authorization of the agent to utter such charges, but the corporation may be liable if such utterances were ratified by it, or if the words were spoken by the agent in the general course of his employment and while transacting corporate business with which he had been intrusted.

31. TRIAL ⊂⇒260(1)—INSTRUCTIONS—REFUSAL.

The refusal of a special instruction covered in substance by the charge given is not error.

32. COSTS ⊂⇒256(3)—APPEAL AND ERROR—PRINTING OF TRANSCRIPT.

As Court Rule 10 (202 Fed. vii, 118 C. C. A. vii) provides that the evidence in a bill of exceptions shall be stated in narrative form, all parts not essential being omitted, defendant though successful on a writ of error should be allowed only one-half of the cost of printing the transcript where the bill of exceptions set forth the entire evidence in questions and answers and included much that was redundant.

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by James Sloan against the Buckeye Cotton Oil Company. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

W. B. Miller, of Chattanooga, Tenn. (George H. Warrington, of Cincinnati, Ohio, of counsel), for plaintiff in error.

G. T. Fitzhugh, of Memphis, Tenn., for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SANFORD, District Judge.

SANFORD, District Judge. This is an action of slander brought by James Sloan, a citizen of Tennessee, hereinafter called the plaintiff, against The Buckeye Cotton Oil Company, an Ohio corporation, hereinafter called the defendant, in the Circuit Court of Shelby County, Tennessee, and removed by the defendant to the District Court below. The trial resulted in a verdict in favor of the plaintiff for $40,000.00 as compensatory and $10,000.00 as punitive damages. On motion for new trial, the plaintiff, upon a conditional requirement by the court, remitted $25,000.00 of the compensatory damages: and judgment for $25,000.00 and costs was thereupon rendered against the defendant; which has brought this writ of error. Manifold errors are assigned.

1. Upon the institution of the suit the defendant employed local counsel at Memphis to take charge of the case in its behalf and remove it to the Federal Court. Before the declaration had been filed they filed in the State court a proper petition for removal, based on diversity of citizenship, with bond. The declaration was filed later on the same day, without notice to them. An order of removal having been subsequently made by the State court, the defendant's counsel entered in the District Court a copy of the record in the State court.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This contained, unknown to them, a copy of the declaration. After the expiration of thirty days from the entry of such record, a judgment by default was entered against the defendant in the District Court. Subsequently an order consented to and approved by the attorneys of record for both parties was entered, reciting that "by consent of parties" this default was set aside "on condition that the defendant shall file its pleas within five days from this date." Thereafter other counsel employed meanwhile by the defendant, appeared and presented, without the approval or consent of the defendant's record counsel, a motion to modify the previous consent order and allow the defendant to file three preliminary motions: (a) to strike the declaration for duplicity; (b) to expunge parts thereof; and (c) for more specific statement of the cause of action. This motion was denied on the grounds that such preliminary motions were dilatory and without merit, and that even if meritorious, the defendant was bound by the former consent order setting aside the default to file "pleas to the merits" within the time specified. The defendant thereupon filed pleas of the general issue.

[1, 2] We pass, without determination, the question whether the declaration, although filed in the State court after its jurisdiction had been terminated by the filing of the petition for removal and bond (Crehore v. Ohio Railway, 131 U. S. 240, 243, 9 Sup. Ct. 692, 33 L. Ed. 144; Marshall v. Holmes, 141 U. S. 589, 595, 12 Sup. Ct. 62, 35 L. Ed. 870), was nevertheless so incorporated in the record entered by the defendant in the District Court as to have properly subjected it to judgment by default under sec. 29 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1095 [Comp. St. 1916, § 1011]). However this may be, the action of defendant's counsel in consenting to the setting aside of the default upon the express condition that the defendant should "file its pleas" within five days thereafter, was an election by which the defendant treated the declaration as properly filed and waived its right to make defense thereto otherwise than by the filing of "pleas" as specified. The trial judge was hence entirely justified in declining to thereafter permit the defendant to file the preliminary motions tendered. Furthermore such motions were in the main, if not entirely, dilatory in their nature and without substantial merit. And in any event, the denial of leave to file them resulted in no prejudice to the defendant by reason of various rulings subsequently made on the trial—including the entire withdrawal of two counts of the declaration from the consideration of the jury—by which the defendant received the full benefit of the contentions sought to be made by such motions, to the extent, if any, that they were meritorious.

[3] 2. The declaration contained four counts. At the conclusion of the evidence the defendant moved for a directed verdict on each and every count. This motion was sustained as to the first and fourth counts, and overruled as to the second and third counts. At the conclusion of the charge the defendant renewed its application for a directed verdict under the third count, in the form of a request for a special instruction to the jury; which the court declined to give. In submitting the case to the jury under the second and third counts the

court directed that if they found for the plaintiff under both counts they should state that they found for him and assess the damages under both counts as one sum, separating only the compensatory and punitive damages; but if under one count only, they should state under which and assess the damages thereunder. The jury returned a general verdict in favor of the plaintiff, as above stated; which must be treated as a verdict on both the second and third counts, assessing the aggregate damages thereunder.

[4] The second count alleged that the defendant, through one H. J. Schoettelkotte, its authorized agent and representative, in a discourse concerning the plaintiff in his capacity as manager of properties operated by the defendant, had at Chattanooga, Tenn., in the presence of one Reynolds, falsely and maliciously said of him that he was short with the defendant in an amount around ninety thousand dollars, meaning thereby that he had fraudulently misappropriated to his own use funds of the defendant and imputing to him the felonies of fraudulent breach of trust or embezzlement. The third, count alleged that the defendant, through said agent and representative, and in a like discourse concerning the plaintiff, had at Memphis, Tenn., in the presence of one Murphee, falsely and maliciously said of him that he was short in his account with the defendant in the sum of about sixty thousand dollars, and, it was said, had made a complete confession of the shortage, meaning thereby that he had fraudulently appropriated to his own use the funds of the defendant to such amount. The defendant plead the general issue merely, with no plea of justification; thereby rendering inadmissible any evidence that the alleged charges were true; and, in effect, admitting their falsity. Tenn. Code, § 2910 (Thomp. Shan. 4631); McCampbell v. Thornburgh, 3 Head. (Tenn.) 109, 111; Bank v. Bowdre Bros., 92 Tenn. 722, 730, 23 S. W. 131; Newell, Slander & Libel (3d Ed.) 767, and cases cited.

The defendant earnestly insists that the trial court was in error in denying it a directed verdict on both the second and third counts. The determination of this question involves a consideration of all the evidence, which is unnecessarily voluminous, confused and in many matters conflicting; as well as of the rules of law applicable thereto. It is impracticable, within reasonable limits, to set forth the details of the evidence, which is largely of a circumstantial nature, relating, among other things, to many conversations with various of the defendant's officers and their conduct prior to and after the alleged slanderous utterances, and including many documentary exhibits; or even, without extending this opinion to undue length, to give a summary of the evidence adequately representing the respective contentions of the parties. We shall hence merely state the general conclusions which we have reached on the controlling questions in issue, after giving to all the evidence our careful consideration.

The defendant, which was engaged in crushing cotton seed for the production of cotton seed oil, owned and operated various mills located at different southern points; among others a mill at Memphis, of which Schoettelkotte was the local manager. It had also leased from the Richmond Cotton Oil Company two mills, located at Corinth,

Miss., and Kennett, Mo., which it also operated. The plaintiff, who was a stockholder in the Richmond Company and had formerly been its general manager, was employed by the defendant as manager of the two Richmond mills; his office being at Memphis. The operation of the defendant's Memphis mill, under Schoettelkotte, and of the two Richmond mills, under the plaintiff, were entirely separate; Schoettelkotte as manager of the Memphis mill having nothing whatever to do with the plaintiff's management of the two Richmond mills.

During the last year of the lease, the plaintiff, at different times, used large amounts of the defendant's funds, aggregating at least $25,-000.00, which had been sent to him for carrying on the operations of the Richmond mills, in the purchase of cotton futures, on margins, through bucket shops at Memphis. These purchases resulted in heavy loss. The plaintiff testified, however, that no part of these purchases were made on his own account; and there was material evidence to the effect that they were in fact made solely as advances to and on the account of the Planters' Gin Company, a ginning company which was under contract, in consideration of advances made, to furnish the Richmond mills with the cotton seed which it ginned, and were hedges intended to protect said Gin Company from losses on purchases of spot cotton. Shortly before the expiration of the lease, the plaintiff made a disclosure of this loss to the defendant's president. The nature and extent of this disclosure is in dispute; but there was circumstantial evidence at least tending to show that the defendant's president believed from the disclosure made and other circumstances that the plaintiff had used the defendant's funds, at least in part, in speculating in cotton on his own account; and that this belief was communicated to Schoettelkotte through the defendant's auditor and general manager.

[5-8] The great weight of the evidence further shows that shortly after this disclosure by the plaintiff, Schoettelkotte, in conversation with Reynolds and Murphee at Chattanooga and Memphis, respectively, used concerning the plaintiff substantially, if not literally, the language set forth in the second and third counts of the declaration, charging him with shortages, without material variance. While proof of words different from those alleged, although equivalent or of similar import, is not sufficient (Dawson v. Holt, 11 Lea [79 Tenn.] 583, 592, 47 Am. Rep. 312; Roberts v. Lamb, 93 Tenn. 343, 345, 27 S. W. 668), it is sufficient if the words proven correspond substantially with those alleged (Dawson v. Holt, 11 Lea [79 Tenn.] at page 592; Grand Union Tea Co. v. Lord [4th Circ.] 231 Fed. 390, 393, 145 C. C. A. 384; Newell, Slander & Libel [3d Ed.] § 963, p. 977) And although that portion of the charge set forth in the third count relating to the plaintiff's supposed confession was not proved substantially in the words alleged, it was sufficient to prove enough of the language alleged to constitute a cause of action. Roberts v. Lamb, 93 Tenn. at page 344, 27 S. W. 668; Massee v. Williams (6th Circ.) 207 Fed. 222, 233, 124 C. C. A. 492, and cases cited. The charge of shortage must, under the pleadings, be taken as admittedly untrue. It was then a question for the jury whether these charges as made, imputed to the plaintiff,

under all the surrounding circumstances, the commission of felonies, involving moral turpitude, as set forth in the innuendoes, and were hence actionable; or merely imputed to him conduct amounting at the most to irregularity or negligence. Grand Union Tea Co. v. Lord (4th Circ.) 231 Fed. at page 395, 145 C. C. A. 384; Newell, Slander & Libel (3d Ed.) § 53, p. 97; Id., §§ 341–345, pp. 362, 363; and cases cited. And even although under the Tennessee statutes a person guilty of embezzling or fraudulently converting the funds of another entrusted to him may escape conviction by making restitution (Allen v. Dunham, 92 Tenn. 257, 269, 21 S. W. 898), it is clear, on principle, that a charge falsely imputing to another the commission of such crimes is nevertheless actionable, just as it is actionable to falsely impute to another the commission of a crime for which prosecution has been barred by the statute of limitations (Newell, Slander & Libel [3d Ed.] §§ 80–82, pp. 125 and 126, and cases cited).

[9, 10] The essential question then is whether there was in the evidence a sufficient showing as to the liability of the corporation for these utterances to warrant the submission of the case to the jury.

There is much conflict of authority on the question of the liability of a corporation for a slander uttered by its agent. In the earlier cases, there was a marked tendency to restrict the liability of a corporation for such slander within narrower limits than in other torts committed by its agents. The later cases, however, tend decidedly to depart from this restriction. And after careful consideration of the authorities, we conclude that the sound rule established by the greater weight of the more recent cases, is that a corporation is liable for a slander by its agent when uttered within the scope of his employment and in the performance of his duties in the course of transacting the business of the corporation. International Text Book Co. v. Heartt (4th Circ.) 136 Fed. 129, 132, 69 C. C. A. 127; Grand Union Tea Co. v. Lord (4th Circ.) 231 Fed. at page 393, 145 C. C. A. 384; Hypes v. Southern Railway, 82 S. C. 315, 64 S. E. 395, 21 L. R. A. (N. S.) 873, 17 Ann. Cas. 620; Rivers v. Yazoo Railroad, 90 Miss. 190, 212, 43 South. 471, 9 L. R. A. (N. S.) 931; Fensky v. Casualty Co., 264 Mo. 154, 160, 174 S. W. 416, Ann. Cas. 1917D, 963; Payton v. Clothing Co., 136 Mo. App. 577, 118 S. W. 531; Waters-Pierce Oil Co. v. Bridwell, 103 Ark. 345, 347, 147 S. W. 64, Ann. Cas. 1914B, 837; Sawyer v. Railroad, 142 N. C. 1, 54 S. E. 793, 115 Am. St. Rep. 716, 9 Ann. Cas. 440; Newell, Slander & Libel (3d Ed.) § 448, p. 436. This accords with the general rule stated by the Supreme Court as to the liability of a corporation for torts committed by its agents, and specifically applied by it in libel suits. Philadelphia Railroad v. Quigley, 21 How. 202, 210, 16 L. Ed. 73; Washington Gas Light Co. v. Lansden, 172 U. S. 534, 19 Sup. Ct. 296, 43 L. Ed. 543, and cases cited. And see Stewart v. Wright (8th Circ.) 147 Fed. 321, 327, 77 C. C. A. 499, citing many cases illustrating the application of this general rule to various torts. Furthermore, in libel as in other torts, the agent's authority need not be in writing under seal or constituted by vote of the corporation, but may be shown by evidence of facts from which his authority to act upon or in relation to the subject matter involved may

be fairly and legitimately inferred. Washington Gas Light Co. v. Lansden, 172 U. S. at page 544, 19 Sup. Ct. 296, 43 L. Ed. 543; New York Central Railroad v. United States, 212 U. S. 481, 494, 29 Sup. Ct. 304, 53 L. Ed. 613. This rule is applicable in an action of slander. Payton v. Credit Co., 136 Mo. App. 577, 118 S. W. 531. We perceive no sound reason why the liability of a corporation for the act of its agent should differ in an action for slander from that in actions for libel or other torts, and can not agree in the view expressed in Southern Ice Co. v. Black, 136 Tenn. 391, 397, 189 S. W. 861, Ann. Cas. 1917E, 695, and other authorities, that in an action of slander, as distinguished from libel and other torts, a corporation is not liable (in the absence of ratification) for the utterances of its agent unless it either expressly authorized the slanderous words or they were necessarily spoken in the course of the agent's duty. On the contrary we think the general rule applicable in slander, as in other torts, is that stated in New York Railroad v. United States, 212 U. S. at pages 493, 494, 29 Sup. Ct. 304, 53 L. Ed. 613, namely, that a corporation is responsible for the acts of its agent done in the course of his employment, although done wantonly, recklessly, or against express orders, and which, although not within his strict powers, he has assumed to perform for the corporation when employing the powers actually authorized. In slander, as in other torts, a corporation, as any other master, is responsible for the act of its servant done in furtherance of its business, not merely when the servant's authority to do such act has been expressly conferred, but also when it was incident to the duties intrusted to him, even though in opposition to his express or positive orders. Sawyer v. Railroad, 142 N. C. at page 8, 54 S. E. 793, 115 Am. St. Rep. 716, 9 Ann. Cas. 440.

[11] It is undisputed that Schoettelkotte, as manager of the defendant's Memphis mill, had no concern with any misappropriation of funds that might have been made by the plaintiff as manager of the Richmond mills, and that his utterances to Reynolds and Murphee concerning the plaintiff were not made in the scope of his employment as manager of the Memphis mill or in the course of any business of the defendant relating thereto; and, hence, that unless at the time of these utterances he had been employed by the defendant on other business in the course of which he made these utterances, the defendant would not, in the absence of ratification, be liable therefor as matter of law.

The record does not show the grounds on which the defendant asked a directed verdict, nor on which it was denied. However, in submitting the case to the jury, the court charged, in substance, that the plaintiff's sole theory in reference to Schoettelkotte's authority was that he had been authorized by the defendant to utter these statements concerning the plaintiff for the purpose of preventing competition in its business by the Richmond Company after the expiration of the lease, by injuring the reputation of the plaintiff, its former general manager, who was expected to again operate its mills for it; and that they could not find for the plaintiff on the question of Schoettelkotte's authority unless this theory was made out by the evidence. There was no ex-

ception to this portion of the charge by either party. The defendant's motion for new trial was furthermore overruled by the court substantially upon the ground that this theory of the plaintiff was sustained by the proof. However, after careful consideration of the entire evidence bearing upon this question, we find no testimony as to any facts from which, in our opinion, it could be fairly and legitimately inferred that the defendant by any of its executive officers employed Schoettelkotte to spread defamatory charges concerning the plaintiff for the sinister purpose involved in this theory.

The plaintiff, however, in this court contends, in the alternative, that the testimony shows that these utterances were made by Schoettelkotte in the course of duties assigned to him in the effort to obtain for the defendant some of the money which it was charged the plaintiff had misappropriated. And upon careful consideration of the entire testimony, including the evidence relating to the previous and subsequent conduct and statements of various officers of the defendant, and considering the conflicting testimony in the aspect least favorable to the defendant, as we must on this review, we find that there was material evidence, of a circumstantial nature, tending to show, as a matter of fair and legitimate inference, that Schoettelkotte, under authority emanating from the defendant's president and transmitted through its auditor and general manager, was intrusted with the duty of endeavoring to obtain a settlement of the plaintiff's supposed shortage through friends of the plaintiff residing at Chattanooga, especially the president of the Richmond Company, who had been his long time friend and financial backer; and that in the discharge of the business of the defendant in respect to the matter thus intrusted to him, he went to Chattanooga and there made the statement to Reynolds concerning the plaintiff's supposed shortage, as charged in the second count of the declaration, in the course of the mission with which he was thus intrusted and as a step in obtaining an interview with the president of the Richmond Company—who was likewise the president of the company of which Reynolds was the manager—for the purpose of laying the plaintiff's supposed shortage before him and obtaining a settlement thereof.

We hence conclude that, independently of the question of ratification, there was sufficient testimony to take the second count to the jury on the theory indicated, on the question of Schottelkotte's authority.

[12] Nor would the court have been justified in withdrawing this count from the jury upon the theory, upon which the defendant earnestly insists, that under the rule laid down by this court in Massee v. Williams (6th Circ.) 207 Fed. 222, 234, 235, 124 C. C. A. 492, the plaintiff's own conduct had been such as to defeat his right of action. In that case, after reviewing West v. Walker, 2 Swan (Tenn.) 32, 33, and other Tennessee cases establishing the local rule that a defendant in a slander suit may, under the general issue, introduce in mitigation of damages testimony which does not amount to justification, as by showing that the charge was occasioned by misconduct of the

plaintiff leading the defendant to believe him guilty, thereby rebutting
the malice with which it might otherwise be presumed the defend-
ant's words were uttered, it was specifically held that, since the amount
of damages should be graduated by the degree of malice by which the
defendant was actuated, while misconduct on the part of the plaintiff
leading to a reasonable belief on the defendant's part that the charges
were true, should be punished, to the extent which the circumstances
warranted, by withholding the punitive damages to which he might
otherwise be entitled, the plaintiff would, nevertheless, be entitled to
receive the full amount of his actual compensatory damages, as deter-
mined in view of all the mitigating circumstances. On the trial below
the defendant did not, in terms at least, rely upon the plaintiff's al-
leged misconduct in mitigation of damages, upon the theory of its
reasonable belief in the truth of the charges made by Schoettelkotte,
but, on the contrary, although it had not plead justification, asserted
in the presence of the jury that its position was that he was actually
a defaulter. Without determining whether its position, apparently one
of absolute justification as a complete defense, was so inconsistent
with the theory of reasonable belief going only in mitigation of dam-
ages, as to prevent the defendant from relying upon the rule of mit-
igation stated in Massee v. Williams, it is ·clear that this rule did not
justify the withdrawal of this count from the jury for two reasons;
first, under all the evidence, the question as to the plaintiff's miscon-
duct and the defendant's reasonable belief was one for the jury; and
second, in any event, this rule only went in mitigation of damages
and did not take away the plaintiff's entire right of action.

[13, 14] The question presented, however, as to the third count, is
entirely different from that as to the second. The statement to Mur-
phee was made under wholly different circumstances.. Murphee was a
personal friend of Schoettelkotte, who had come to see him on a social
visit having no connection whatever with any business of the defend-
ant. The statement concerning the plaintiff was casually made, in the
course of a purely social conversation, by way of explaining Schoettel-
kotte's delay in seeing Murphee. We find no testimony whatever jus-
tifying the inference that it was made within the scope of any duty
for which Schoettelkotte had been employed or in relation to any busi-
ness of the defendant whatsoever. There was furthermore no evidence
that the fact that Schoettelkotte had made this statement to Murphee
was ever brought to the knowledge of the defendant, or that it was
ratified in any manner or form. We hence conclude that the court was
in error in denying the defendant's motion for a directed verdict on
the third count, relating to this conversation, and also in declining to
give the special instructions requested directing a verdict on this count;
to both of which actions the defendant duly excepted. And hence,
since the verdict was a general verdict upon both the second and third
counts, with an assessment of the aggregate damages under the two
counts, which are not apportionable, it necessarily results that on ac-
count of the erroneous submission of the third count to the jury, the
entire verdict must be set aside and the defendant awarded a new
trial. Wilmington Mining Co. v. Fulton, 205 U. S. 69, 79, 27 Sup.

Ct. 412, 51 L. Ed. 708. And see Stultz v. Cousins (6th Circ.) 242 Fed. 794, 797, 155 C. C. A. 382.

We therefore need not determine the question of practice, whether, if the verdict rested upon the second count alone, the facts that the motion for a directed verdict was apparently denied upon an untenable theory, the case submitted to the jury upon such theory, without exception by the defendant, and the verdict sustained upon such theory, without any submission to the jury of the theory as to Schoettelkotte's authority upon which liability could be properly predicated or any determination of such issue by the jury, would now constitute of itself reversible error. See Louisville Railroad v. Womack (6th Circ.) 173 Fed. 752, 759, 97 C. C. A. 559.

[15-17] 3. Various errors are assigned as to rulings on the evidence. One of these assignments relates merely to the mode of proving a fact which was specifically admitted by the defendant; one to a ground of objection not made in the court below; one to evidence, which after being admitted, was withdrawn by the court from the consideration of the jury; one to evidence not in fact admitted, the witness having answered the question propounded in the negative; one to the exclusion of evidence to which no exception was taken; and one to the supposed denial of the right of cross examining upon a matter which was not in fact denied. None of these assignments are well taken. As to the other assignments in reference to rulings on the evidence, in so far as argued in the defendant's brief, our conclusions are:

[18] (a) The only objection made on the trial to the plaintiff's testimony as to a statement made by the defendant's president in testifying on another occasion, was that it was stated that this testimony (which did not appear to have been given in the form of a written deposition) had been transcribed in book form, of which plaintiff's counsel had a copy. Such transcript of oral testimony did not, however, become the best evidence thereof, excluding the testimony of a witness who heard it as orally given.

[19] (b) The sole ground of the defendant's objection to the plaintiff's "gauntlet letter" to the defendant's president was that it contained nothing but self-serving declarations. It, however, contained a reference to statements that had been circulated concerning the plaintiff which was clearly admissible on the question whether knowledge had been brought home to the defendant of Schoettelkotte's utterances concerning the plaintiff, bearing on the matter of ratification. Manifestly the rule stated in Teller v. Patten, 20 How. 125, 129, 15 L. Ed. 831, and other cases as to the exclusion of self-serving statements made by a party to a stranger does not justify the exclusion of a communication of this character sent to the opposite party.

[20] (c) The plaintiff, over the defendant's objection, was permitted to introduce evidence as to the custom of cotton seed oil mills to protect purchasers of seed cotton by the purchase of cotton futures as hedges. The defendant's objection to this evidence, which was somewhat vaguely stated, was, in substance, so far as now material, that the matter of advances made by the Richmond mills to the Plant-

ers Gin Company was specifically defined by contract and could not
be varied by custom. While, however, the defendant had not filed a
plea of justification, its counsel had previously stated in the presence
of the jury that it was the position of the defendant and of its counsel
that the integrity of the plaintiff was questioned; that he was a de-
faulter; and that he had used the defendant's money in bucket shops
in future transactions of his own. It had vigorously cross examined
the plaintiff in reference to his transactions, and had introduced evi-
dence in the effort to show that the plaintiff had in fact used its funds
in speculations on his own account and not by way of advances to
the Planters Gin Company as he claimed. Under these circumstances
we think the trial court properly admitted evidence of the custom in
respect to the purchase of cotton futures as hedges as bearing on the
question whether the use of the defendant's funds was in fact in-
tended as good faith advances to the Planters Gin Company under its
contract, as construed in the light of trade customs.

However, in the testimony admitted as supporting this custom, or
as otherwise tending to show plaintiff's authority to buy cotton fu-
tures as he did, there seems to have been a failure to preserve any
clear distinction between buying or selling a future to hedge against
loss upon a purchase or an existing holding of cotton for ginning, and
that dealing in futures which would be merely gambling, in the hope
of retrieving an accrued loss. The plaintiff's transactions in the bucket
shops are claimed to have been of this latter class; and, if this be
true, it is obvious that the testimony tending to show authority to buy
futures for the former purpose would not tend to support purchases
of the second class. We assume that upon the retrial which is to be
had attention will be given this distinction.

[21] (d) The evidence as to the amount invested in the defendant's
business was admissible on the question of punitive damages; the evi-
dence being sufficient, in our opinion, to warrant the submission of
this matter to the jury. See Price v. Clapp, 119 Tenn. 425, 432, 105
S. W. 864, 123 Am. St. Rep. 730; Massee v. Williams (6th Circ.) 207
Fed. at page 235, 124 C. C. A. 492; American Publishing Co. v.
Sloan (6th Circ.) 248 Fed. 251, —— C. C. A. —— (February 11, 1918).

[22] (e) After the close of the defendant's evidence in chief, the
plaintiff was permitted in rebuttal to show his general good reputation
in the community prior to the alleged slander, over a merely general
objection by the defendant for immateriality, inadmissibility and in-
competency. In Martin v. Hooker, 7 Cold. (Tenn.) 130, 131, it was
held that a plaintiff in an action of slander could not, under the gen-
eral issue, introduce evidence in chief of his good character, which was
inadmissible except to rebut evidence of bad character offered by the
defendant, and that the admission of such proof in chief was reversi-
ble error. However, it appears that in a subsequent unpublished
opinion in Murtaugh v. Publishing Co., the Supreme Court of Ten-
nessee declined to follow the ruling in Martin v. Hooker, at least to its
full extent, and held that, under its more recent practice, such evidence,
even if inadmissible, being merely cumulative on the plaintiff's pre-
sumption of good character, did not constitute reversible error. In

Massee v. Williams (6th Circ.) 207 Fed. at page 235, 124 C. C. A. 492, the question of the correctness of the rule stated in Martin v. Hooker, supra, was reserved, this court, however, saying that while such proof was not necessary in chief, and was generally unnecessary, the plaintiff had the undoubted right to rebut any assault made on his character by the defendant. We need not now determine the scope or correctness of the Tennessee rule; or whether it is, as a state law of evidence, binding on a federal court sitting in Tennessee in an action at law. See American Publishing Co. v. Sloan (6th Circ.) supra (February 11, 1918), and cases cited. It is clear that in the situation presented in the court below, in view of the character of the cross examination of the plaintiff, tending directly to impeach him, and the statement previously made by the defendant's counsel that the defendant questioned the plaintiff's integrity and asserted that he was a defaulter, the trial court was entirely justified in permitting the plaintiff to rebut the assault thus made upon his character by proof of good reputation prior to the alleged slander.

[23-28] 4. Various errors are further assigned in respect to the charge of the court and its action on defendant's requests for special instructions. One of these assignments relates to the action of the trial judge in submitting the case to the jury on the plaintiff's theory as to Schoettelkotte's authority, to which the defendant did not except; one to an addition given to a special instruction requested by the defendant, to which it likewise did not except; and one to the supposed denial of a special instruction which was in fact granted. As to such of the other assignments of error relating to the charge and requests for special instructions as are argued in the defendant's brief, our conclusions are:

(a) The defendant excepted to so much of the charge as related to ratification on the grounds: first, that ratification was not averred; and, second, that there was no evidence on that point. Ratification was not averred in any count of the declaration. However, ratification, being retroactive in its effect and equivalent to original authority (Fleckner v. United States Bank, 8 Wheat. 338, 362, 5 L. Ed. 631; Norton v. Shelby County, 118 U. S. 425, 451, 6 Sup. Ct. 1121, 30 L. Ed. 178) the generally established rule, to which we adhere, is that it may be proved under a general averment of authority, without being alleged specially (Hoyt v. Thompson's Ex'r, 19 N. Y. 207, 210; Hubbard v. Williamtown, 61 Wis. 397, 400, 21 N. W. 295; Porter v. Land Co., 127 Cal. 261, 271, 59 Pac. 563; Seal v. Loan Co., 5 Wash. 422, 424, 32 Pac. 214; Hoosac Mining Co. v. Donat, 10 Colo. 529, 533, 16 Pac. 157; Bigler v. Baker, 40 Neb. 325, 336, 58 N. W. 1026, 24 L. R. A. 255; Long v. Osborn, 91 Iowa, 160, 163, 59 N. W. 14; Plumb v. Curtis, 66 Conn. 154, 173, 33 Atl. 998; 16 Enc. Pl. & Pr. 904; 2 Abbott's Trial Brief on Pleadings, §§ 99, 124, pp. 1939, 1361; 2 Corp. Jur. § 613, p. 906). There was furthermore, in our opinion, some substantial testimony, of a circumstantial nature, tending inferentially to show ratification by the defendant as to Schoettelkotte's utterance to Reynolds at Chattanooga. Silence of the principal, after knowledge of the unauthorized act of an agent, may, in connection with other circum-

stances, be sufficient evidence of ratification to take a case to the jury. Hanson v. Boyd, 161 U. S. 397, 410, 16 Sup. Ct. 571, 40 L. Ed. 746; Dawson v. Holt, 11 Lea (Tenn.) 583, 587, 47 Am. Rep. 312. Furthermore the defendant itself subsequently requested a special instruction to the jury defining what had to be proven by the plaintiff to show ratification of Schoettelkotte's utterance at Chattanooga, which was given by the court.

The evidence as to ratification was, however, very meager, and barely sufficient to pass beyond mere conjecture or surmise into an inference of sufficiently substantial character to go to the jury. Furthermore the instructions to the jury on this subject, both as given originally and in response to the defendant's request, were of a general character, and did not, in our opinion, sufficiently call attention to the precise questions to be determined. A charge to the jury on the question of ratification should explain the essential elements involved as applied to the facts in controversy. Evans v. Buckner, 1 Heisk. (Tenn.) 291, 293; Western Railroad v. McElwee, 6 Heisk. (Tenn.) 208, 220. To avoid an erroneous determination of this question, we think the jury should have been specifically instructed, as applied to the testimony in this case, that if Schoettelkotte's utterance to Reynolds was not in fact within the scope of his employment, the defendant would not be liable therefor by reason of ratification, unless Schoettelkotte made this statement concerning the plaintiff while purporting to act as the defendant's agent and in its behalf on the assumed mission of endeavoring to obtain a settlement of the plaintiff's supposed shortage (2 Corp. Jur. § 91, p. 474, and cases cited), and unless the defendant, thereafter, with full knowledge that he had purported to act as its agent upon such assumed mission in its behalf, had, either expressly or impliedly, approved such mission and intended to adopt the same (Supervisors v. Schenck, 5 Wall. 772, 782, 18 L. Ed. 556; 2 Corp. Jur. §§ 102, 112, pp. 484, 492, and cases cited), thereby enlarging, by ratification, the scope of his employment and bringing his utterance to Reynolds within it; and further that the subsequent repetition by the defendant of a similar charge against the plaintiff in an effort to collect his supposed shortage did not of itself constitute ratification of Schoettelkotte's previous mission, but was merely evidence bearing on the question whether the defendant in fact intended to adopt and ratify the same.

[29] (b) The court charged the jury generally that where it was in the power of a party to produce a witness who had peculiar knowledge of the facts bearing on a material issue, and such witness was on hand and could be offered and his evidence was withheld, the presumption was that such evidence if introduced would not support the contention of such party. The court did not, however, refer to any particular witness or make any specific application of this general rule. The defendant excepted to this portion of the charge solely on the ground that "that meant Mr. Schoettelkotte." Manifestly this exception was not well taken, as Schoettelkotte had in fact been placed upon the stand by the defendant and had testified fully. In view of this defective exception, limited to Schoettelkotte alone, it is unnecessary to determine the correctness of the general rule of law stated, as applied to the

facts of this case, or whether, as claimed in the brief it was prejudicial to the defendant as referring, not to Schoettelkotte, but to the defendant's auditor, who did not in fact testify.

[30] (c) The special instruction requested as to the liability of the defendant for utterances by Schoettelkotte of which complaint was made in the brief, was properly denied, as it asserted non-liability of the defendant unless Schoettelkotte had been authorized by the defendant "to go out and utter the words spoken," thereby erroneously excluding liability for words spoken by Schoettelkotte in the general course of his employment and while transacting business of the defendant with which he had been intrusted, although such specific words had not been authorized, as well as liability by reason of ratification.

(d) The special instruction requested as to the authority of the defendant's auditor was properly denied, as it embodied a statement of fact as to the limitations of such authority by directions given him, which involved an issue of fact, depending upon circumstantial evidence, which the court was not authorized to withdraw from the consideration of the jury.

[31] (e) The special instruction requested that there could be no recovery by reason of a report made by the defendant to a bonding company was properly denied, as the court had in its charge instructed the jury that this report was not a ground of recovery, not being declared on in the declaration, but merely a circumstance to be considered in determining the defendant's state of mind at the time of the alleged slanderous utterances and Schoettelkotte's authority in reference thereto.

[32] 5. The other assignments of error do not require specific reference. A question remains, however, as to the awarding of costs. Rule 10 (202 Fed. vii, 118 C. C. A. vii) of this court provides that the "evidence in a bill of exceptions shall not be set forth in full, but shall be stated in simple and condensed form," all parts not essential being omitted, and the testimony being stated "only in narrative form," save that, upon direction of the judge, any part thereof "shall be reproduced in the exact words of the witnesses." However, in this case, the bill of exceptions sets forth the entire evidence, in the exact words of the witness; with all questions, all repetitious answers, and all arguments of counsel; with no omission of immaterial matters; no condensation whatever; and no reduction of the testimony to narrative form, or direction of the judge dispensing with this requirement. The transcript also contains many immaterial matters, such as motions to set the case for trial, and orders continuing hearings, showing the beginning and respite of the trial from day to day, and extending times for motions, as to which no question whatever arises; and even the "jury ticket" accompanying the entry of the verdict. The result is that there has been submitted to this court a printed transcript containing 534 pages, the length and redundancy of which has greatly increased the labors of the court in the consideration of the questions presented. Under these circumstances, we are of opinion that in awarding costs the defendant should be denied recovery for one-half of the costs of the transcript and of printing the record. See Chesbrough v. Wood-

worth (6th Circ.) 195 Fed. 875, 887, 116 C. C. A. 465; Garland v. Quinn (6th Circ.) 242 Fed. 267, 271, 155 C. C. A. 107.

6. For the reasons stated, the judgment is reversed and the cause remanded to the court below, with instructions to grant the defendant a new trial. The defendant will recover all costs incident to the writ of error, except one-half of the costs of the transcript and of printing the record.